B. J. Williams et al. *v.* Bartlett, Gould & Blakemore.

1. Bills and Notes. *Consideration. Mortgage. Rents.* Bartlett, Gould & Blakemore had a mortgage on land devised to W. W. Trigg, he being in possession; the time for payment having passed; W. W. Trigg sold and conveyed the land to Williams, with the assent of Bartlett, Gould & Blakemore, they releasing their mortgage, and receiving the notes given by the purchaser, secured by another deed of trust, having twenty-one months to run. The land was subject to the debts of the ancestor of W. W. Trigg, who had devised it to him. It was afterwards subjected to sale for their payment. The purchaser remained in possession up to the appropriation to the ancestor's debts, the rents amounting to as much or more than the notes given for the purchase. *Held*, on bill filed to enjoin the collection of the notes in the hands of Bartlett, Gould & Blakemore and their assignees, that the consideration paid by them was ample, in the loss of the rents, which they might have appropriated to their debt; that there was no failure of consideration on their part, and a recovery could be had on the notes.

2. Chancery Pleadings and Practice. *Endorser. Demand and notice.* That where an endorser wishes to defend in equity against his liability, for want of due notice, he must make such defense in his pleading, especially where the case has been conducted to a hearing, on the assumption of recognition of his liability being fixed on his part. He cannot for the first time raise this question under a reference, ordering a report as to the amount due to the holders of the notes.

3. Same. *Same. Same.* Where notes endorsed have been enjoined from being collected by bill on the part of the maker and en-

Williams *v.* Bartlett.

dorser, before due, the holder is excused from demand and notice to such endorser. It would be idle to demand what he has been forbidden to receive by such injunction.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

ESTES & ELLETT, METCALF & WALKER, GREER & ADAMS and W. M. RANDOLPH for Complainants.

W. S. & J. R. FLIPPIN, E. M. HEARN and SMITH & COLLIER for Defendants.

FREEMAN, J., delivered the opinion of the Court.

The original bill in this case was filed September, 1870, by B. J. Williams and E. D. Massey. Its purpose was to enjoin certain suits brought on notes given by Williams, with Massey as endorser, in the Circuit Court of Tipton County, and to restrain the negotiation of other notes.

The main facts necessary to the understanding of the questions to be decided in this case are as follows:

John Trigg died in Shelby County about the year 1863, owning a large landed estate, both in Tennessee and other States. He devised his property to his children, and, among other things, a tract of land in Tipton County, of upwards of nine hundred acres, to W. W. Trigg, a son. It

was thought by all parties, at the date of the transactions hereinafter mentioned, that the estate was amply solvent, and the devisees, after paying debts, would have a considerable estate.

In 1866 a bill was filed in the Chancery Court at Memphis by Nelson, the executor of John Trigg, to settle up the estate, pay the debts and execute the trusts of his office under the direction of that Court. In this bill it appeared that the indebtedness was probably about ninety thousand dollars, and it was charged that the real estate would have to be resorted to for the payment of the debts, the real estate in Tennessee being specifically pointed out, and a sale of so much as might be necessary to pay the debts, after taking proper accounts specifically sought by the bill. It seems that there was no suspicion up to this time that the estate would prove insolvent, but was supposed that a few of the most valuable and saleable pieces of property around and in the city of Memphis would be sufficient to discharge the indebtedness.

On the 15th of February, 1867, W. W. Trigg gave his four promissory notes, of five thousand dollars each, due on the 15th of February, 1868, to Bartlett, Gould & Blakemore, a firm of merchants in the city of Memphis, and at the same time gave them a conveyance of the tract of land devised by his father, lying in Tipton County, to secure these notes, the conveyance being directly to them, but subject to the condition that if he paid the above notes when they fell due, the con-

veyance should be void, otherwise to remain full force and effect.

The notes were not paid, and the matter remained in this condition until March 27th, 1869, when complainant, Williams, contracted to buy said land at the sum of $18,000, paying $1,000 cash, giving his notes, twenty-six in number, due in nine and twenty-one months from date, with his son-in-law, Massey, as endorser, the notes being made payable to Massey, by him endorsed, handed to Trigg, and by him delivered to Bartlett, Gould & Blakemore, in the discharge of his debt to that extent.

This sale was negotiated with the assent and active concurrence of the firm who held the legal title to the land.

It was understood between all the parties that the firm were to receive the notes, and release their mortgage. In fact it was known that the firm was in debt, and pressed, and desired to realize the debt due them, and to use the notes received for the land in discharging their own debts. In view of this, and in order to enable them to do so more conveniently, the notes were made, part of them of $550 each, and six, we believe, of $1,000 each, due as above stated. At the same time Williams received a deed from Trigg for the land, and went into possession, but conveyed the same to Flippin in trust to secure the payment of the notes given for the purchase money. A part of these notes having been assigned

by Bartlett, Gould & Co. to Walton, and suit brought on them in the Circuit Court of Tipton County, this bill was filed in 1870, as we have stated, to enjoin this suit.

It is proper to say in addition, that a receiver was ordered at an early stage of the proceeding and a report ordered as to the value of the rents, which were reported to be $4,000 per annum, which report seems sustained by the proof.

By agreement of parties, Williams was permitted to continue in possession of the land, on giving bond for payment of $3,000 per annum, and if he failed to give the bond the Clerk and Master was to take possession as such receiver. He continued to occupy the land and enjoy the profits, under this arrangement, until their appropriation for the debts of the ancestor, John Trigg.

The deed of trust to Flippin, given as we have said, to secure the land notes, postponed the sale of the land until the notes fell due, say twenty-one months. Under the mortgage held by Bartlett, Gould & Blakemore they had at this time the right of immediate foreclosure, and had had that right for some time, the condition having been broken, to-wit: The failure to pay the notes for $20,000, which it was given to secure. Under these circumstances, certainly from the time of failure to pay, the mortgagee had the right to file his bill, and with or without a prayer to that effect, on showing the facts as they appear in the record, have a receiver appointed for the rents,

and have secured such rents to be appropriated to the payment of his debt. See *Henshaw* v. *Wells,* 9 Hum., 581. The mortgagor in possession, it is said, in the above case, has but the right to possess the premises at will, in the strictest sense, and is not therefore entitled to notice to quit, and may be put out of possession by ejectment or other proper suit, either before or after default, if the mortgagee choose: *Ibid* 579; 4. Kent, 155.

It is clear in this case that the mortgagees, Bartlett, Gould & Blakemore, released this mortgage, with the incidental rights we have mentioned, on the consideration that they should have the notes, secured by the last deed of trust, and said notes were prepared, endorsed by Massey, and handed over to them in accordance with the understanding of all the parties at the time.

It is difficult on this aspect of the case, if not impossible, to say that this was not a valuable consideration, to support the transaction, so that they would hold these notes as *bona fide* purchasers, taken for value, certainly to the value of the advantage so released, which would have been, as it has turned out, the value of the rents until the appropriation of the land under the prior charge in favor of the creditors of John Trigg; this would be the case. We thus qualify the statement because of the fact that if the title was subject to the prior charge of John Trigg's debts in the hands of the purchaser, and of Flippin, it was equally so subject

in the hands of Bartlett, Gould & Blakemore, and
the release of the title in them was therefore di-
minished in value, so far as the legal title is con-
cerned to that extent.

As to the question of improvements suggested
by counsel, we know of no principle on which a
mortgagor in possession could claim to set these
off against the mortgagee or beneficiary under the
deed of trust.    This view is conclusive of the re-
sult in this case, as the land is not shown in this
record to have been appropriated yet, though it
has been done as stated by counsel, but this was
not done for probably seven or eight years or
more after the date of this transaction.

To make this view a little more distinct, as-
sume that complainant is entitled to set off his
damages by reason of the breach of the covenant
against incumbrances, against these notes, and the
land itself is lost to him.    The notes due and the
amount paid would thus be met and absorbed.
But Bartlett, Gould & Blakemore had a mortgage
from Trigg, conveying them the legal title to this
land, which they were entitled to foreclose the day
the sale was made to Williams.    This entitled
them to have the rents applied to the payment of
their debt secured by the first mortgage.    This
right they released, and these notes secured by the
second deed of trust to Flippin, were taken in the
place of Trigg's liability on the first notes and
mortgage.    If these notes had not been substituted
for the first, those notes might have been paid by

an appropriation of the rents of that land. Williams gets these rents from that day up to the appropriation, which at $3,000 per annum is more than the amount due from Trigg to these parties; while he has lost the legal title to the land, he has received from Bartlett, Gould & Blakemore, and they have been deprived of it by their release of their mortgage, the full value of these notes, and so the consideration paid by them for the notes, is full and ample, all of which has been received and enjoyed by Williams.

That the mortgagees were entitled to these rents there can be no question under the facts we have stated. The executor of John Trigg's estate could only have the land itself applied to payment of debts, and until such appropriation the heir or devisee was entitled to the rents, as we held in a case at Nashville, January, 1880. The mortgagee holding his title was equally entitled to this right, which was released by these mortgagees to Williams, and which he has enjoyed, and is a full consideration for these notes, in their hands or their assignees, and so nothing else in the case it must be decreed.

It is, however, insisted for Massey that he is discharged, as endorser, at least as to part of the notes for want of proper demand and notice to him of failure to pay on the part of the makers.

We do not think this defense can be made available in this case for several reasons.

First, No such question is presented by any

pleading in the case, but the liability of both maker and endorser is distinctly recognized in the original and supplemental bills, and impliedly admitted .in the answer to the cross bill, certainly no objection of this kind is suggested.

Second, By the original bill these notes were impounded and enjoined from being collected by the holders, that is, those not due. Massey, the endorser, is party complainant to this proceeding, by which the holders are inhibited from collecting or enforcing them. Having thus secured them from being enforced, the endorser is not entitled to require the idle ceremony of haviag them demanded, and notice of failure to pay on the part of the makers. The holder was enjoined from receiving the money if demanded, and he cannot be held bound to demand, for the benefit of the endorser, what that endorser had joined in forbiding him to receive.

As to the notes falling due before the injunction, they are recognized in the bill to have been protested, and no issue made at any stage of the case, as to regularity of notice. Under the case as found in this record, we do not think this question was before the Chancellor for adjudication, nor was it included in the order of reference, under which it was for the first time raised.

We need not go into any other features of the case as presented in the argument. It is clear there is nothing in the pleadings on which to base the claim for recission, that is sustained by

the proof. The only ground on which complainants might have had a standing in Court, is the breach of warranty against incumbrances and of seizin and this was not the theory of .any of their pleading; .is only an after thought of the ingenuous counsel who came into the case in this Court. That ground could only be good against an assignee, who had not paid value, and being an equitable set off, th holders are entitled to be repaid, the consideration passing fr..m them, to-wit: the rents, and these rents are sufficient to pay / and discharge the notes sued on, and the holders are entitled to recover on them on this ground.

There was no failure of. consideration so far as these parties were concerned, whatever there might be as to the legal title to the land. A decree will be drawn in accord with this opinion. The costs will be paid by complainants.