# CHARLESTON.

THIRD NATIONAL BANK OF CUMBERLAND v. LABORINGMAN'S MERCANTILE & MANUFACTURING COMPANY *et al.*

Submitted September 13, 1904—Decided December 13, 1904.

1. CORPORATION.—*President.—Powers.*

   The president of a corporation has no inherent authority by virtue of his office to execute a negotiable note which will bind the corporation.   (p. 452).

2. CORPORATION.—*Directors.—Ratification.*

   The directors of a corporation may ratify any act done or contract made by its president without authority, which they could have authorized him to do or make.   (p. 452).

3. CORPORATION.—*Authority Inferred from Acts of Officer.—Ratification.*

   The authority of an officer of a corporation to do a particular act may be inferred from proof of his habitual doing of such acts, with the acquiescence of the directors of the corporation. And where no such acts are proven, if any act or contract of such officer, made without authority, is subsequently ratified by the driectors upon full knowledge of all the circumstances of the case, the corporation will be bound thereby as fully, as if the officer had been expressly authorized to do the act or make the contract.   (p. 453).

4. CORPORATION.—*Officer's Acts Ratified.*

   M., as president of the defendant corporation, without authority, made the negotiable note of the corporation, had it discounted by the plaintiff bank, and the proceeds thereof credited to the bank account of defendant. The proceeds of the note so deposited, were by direction of M., credited on the books of defendant, to an account due it from another company of which M. was manager, and for which indebtedness he was

liable to defendant. Defendant then, by its checks drawn on this fund in bank by its manager in favor of various wholesale houses, its creditors, paid out the same; but all of these transactions were, at the times thereof, unknown to the directors of the company, but were afterwards brought to their notice. The defendant failed to return to the bank the money, the benefit of which it had thus received, when its receipt had become known to defendant's directors. *Held:* That the failure of the defendant to return to the bank the money so received by it, when its receipt had become known to its directors, was a ratification of the execution and use of the note by Murphy as aforesaid. (p. 455).

5. AGENT.—*Ratification.—Voidable Contract.*

It is a general principle which applies without regard to the mode of ratification that a voidable engagement, made by one assuming to act as agent, cannot be ratified in part, so far as it is beneficial to the principal, and repudiated so far as it is detrimental to him. (p. 456).

Error to Circuit Court, Tucker County.

Action by the Third National Bank of Cumberland, Md., against the Laboringman's Mercantile & Manufacturing Company and others. Judgment for defendant company, and plaintiff brings error.

*Reversed.*

CUNNINGHAM & STALLINGS, for plaintiff in error.

C. O. STRIEBY, for defendants in error.

MILLER, JUDGE:

The Third National Bank of Cumberland, Maryland, a corporation, organized under the laws of the United States, commenced its action, *in debt*, in the circuit court of Tucker county, against the Laboringman's Mercantile & Manufacturing Company, a corporation, organized under the laws of the State of West Virginia, P. M. Murphy, President, P. M. Murphy, N. B. Twigg, M. M. Phelps, W. E. Patterson, E. S. Muse, J. B. Guinard, F. M. Houser, J. W. Baker, Samuel Buser, B. A. Stuckey and Geo. W. Everett, for the recovery of one thousand dollars' debt, with $2.79 protest charges, and interest; and at the August rules, 1901, filed its declaration therein, in which it is alleged, that the defendant company, by P. M. Murphy, its president, made its certain negotiable note in writing, dated

the 29th day of March, 1901, and subscribed its name thereto, as follows, to-wit: "Laboringman's Mer. & Mfg. Co.," by P. M. Murphy, Pres., thereby meaning the Laboringman's Mercantile and Manufacturing Company, whereby it promised, three months after date, to pay to the order of P. M. Murphy, pres., one thousand dollars, at the Third National Bank of Cumberland, Maryland, without defalcation, for value received; that said P. M. Murphy, pres., before the maturity of the note, indorsed the same to P. M. Murphy, and in like manner, Murphy indorsed it to Twigg; that all of the defendants indorsed the note in the order as above named; that said Geo. W. Everett indorsed it to the plaintiff bank; and that, at its maturity, the note was protested for non-payment.

At the November term, 1901, of the court, on motion of the plaintiff, the action was abated as to all of the said endorsers of the note, including P. M. Murphy, president, and was ordered to be proceeded in against the defendant, the Laboringman's Mercantile and Manufacturing Company. The plaintiff, at the January rules, 1902, filed, in the clerk's office, an amended declaration against the defendant corporation alone; but otherwise substantially in the language of its original declaration. At the March term, 1902, of the court, the defendant company entered its plea of *nil debet,* and it also filed two several special pleas in writing, both verified by affidavit. One of said special pleas avers that the defendant did not make, or deliver for discount, the note sued on and described in the declaration, and that said note was not discounted by plaintiff for defendant; the other plea avers that the defendant company did not make or deliver for discount the note sued on and described in the declaration, and that said note was not discounted by the plaintiff for the defendant; that P. M. Murphy never had the authority of the defendant to make or deliver the said note for discount to the plaintiff; that N. B. Twigg, and the others named therein, whose names appear on the back of the note never indorsed the same; that the plaintiff never discounted the note for defendant; and that the defendant never became liable to pay the plaintiff, the sum of money in the said note specified. Issue was joined on each of the aforesaid pleas, and at the same term a trial of said action was had before a jury. At the conclusion of the evidence, the defendant demurred thereto, in

which demurrer the plaintiff joined, and the jury found for
the plaintiff the sum of $1,042.00, if the law upon the demurrer
to the evidence be for the plaintiff; but if the law be for the
defendant, they found for the defendant. The court sustained
defendant's demurrer, and gave judgment against the plaintiff
for costs. To this judgment, the plaintiff excepted, and obtained
from this Court, a writ of error and *supersedeas* to the same.

Upon the issue thus made, the burden was upon the plaintiff
bank to prove the authority of Murphy to make said note for
the company.

It appears from the record that the defendant did a general
mercantile business at Davis, Tucker county, West Virginia.
Said P. M. Murphy was, at the date of the note in controversy,
and had been for some time prior thereto, president; W. E.
Patterson, secretary, and a director; and W. W. Golightly, gen-
eral manager of the company. Who the other directors were
is not shown. Its stockholders numbered about one hundred.
There is no evidence in the record showing the extent of the
authority of the president of the company, except a by-law, in
these words: "The president shall preside at all meetings of
the stockholders and board of directors, call all special meet-
ings, sign minutes of all meetings; all *contracts made by the
company,* and all certificates of stock."

Murphy, as it is shown, claiming to act as president, executed
the note in controversy, payable to himself as president, and
then endorsed as such, and also individually, and presented it
with the other names indorsed thereon, (some of which, on the
trial, proved to be forgeries), at the Third National Bank of
Cumberland; had the same discounted, by the bank, and the
proceeds thereof placed to the credit of the defendant. It is
not shown that any of the directors or officers of the company
had, at that time, any knowledge of the making or discounting
of the note. Said W. E. Patterson, J. B. Guinard, and Geo.
W. Everett, stockholders in said company, whose names appear
on the back of the note, testified that they did not indorse, and
did not authorize any person to indorse, or put their respective
names upon, said note for them; and that they had not seen
the note until the day of the trial. H. E. Weber, president of
the bank, testified that the note sued on came into possession
of the bank through Murphy, as president of the defendant com-

pany; that it was discounted; that the proceeds thereof were placed to the credit of the defendant; that the bank then and prior thereto had an open account with the defendant; that the "note was signed by Murphy, president, brought to us by Murphy, president, and Mr. Murphy is the only person we ever saw or knew, of the company, until we came up here to try this case." He further testified that on May 19, 1899, Murphy came to the bank, represented himself to be the president of the defendant company, asked to open an account with the bank, and, at the time, deposited some money therein; and said that later he would probably want a loan of three thousand dollars; that on the 26th day of May, a week later, and almost two years before the note in controversy was made, the bank discounted a three thousand dollar note for the company, and placed its proceeds to the credit of the defendant. It further appears that the proceeds of the two notes and some deposits, amounting to $1,400 or $1,500, placed in the bank by Murphy and Golightly for the company, were checked out and paid to wholesale merchants who were creditors of the defendant, in checks in their favor drawn on said bank, but nothing is shown by the records of the company or otherwise to prove that the directors or other officers of the company, except Murphy and Golightly, had any notice or knowledge of the aforesaid transactions.

It is also shown that, at the time of the execution and discount of the one thousand dollar note, there was another company at Davis, called the "Davis Poultry Company," of which Murphy was manager; that this last named company owed the Laboringman's Mercantile & Manufacturing Company about $1,044.00 for which said Murphy was liable; that Murphy told Golightly that he (Murphy) had deposited in the plaintiff bank, to the credit of defendant $1,000.00 of his own money, which should be placed on the books of the defendant company to the credit of the Davis Poultry Company, and that the credit of $1,000.00 to the Poultry Company was accordingly made on the books of the defendant company, leaving a balance of $44.73 due to defendant from the Poultry Company. It also appears that Murphy told said W. E. Patterson that he had received some money from the estate of his (Murphy's) father; that he had deposited $1,000.00 thereof to the credit of defendant company, which was to be applied by defendant to its account

against the Davis Poultry Company, and on Murphy's private account as manager of the last named company. This information was communicated by Patterson to Golightly. It is further shown that one George Thompson loaned to Murphy for defendant company $200.00 on the 15th day of January, 1901, and $500.00 on the 2nd day of February, 1901; that Thompson took no notes or other written evidence for these loans, that they were repaid to him with the checks of the defendant company, signed by Murphy as treasurer, and countersigned by Golightly, as manager; that F. A. Cruikshank, on the 12th day of February, 1901, loaned to Murphy $200.00 for the defendant company, for which Murphy gave the company's note, signed by him as president, which note was afterwards paid to Cruikshank *at his own house in currency* by Murphy, but not until after the note had been placed in the hands of A. R. Stallings, an attorney, for collection, and after Murphy had been notified of that fact. Murphy then requested Cruikshank to take the note out of the lawyer's hands, and he, Murphy, would pay it. In December, 1900, or January, 1901, A. Thompson loaned $400.00 to Murphy as the president of defendant company, and received its note therefor from Murphy, which has never been paid, the company having repudiated it. In May, 1901, J. W. Baker loaned to Murphy $300.00 and received for it the note of the defendant company, executed by Murphy, and payable at its office, which has not been paid.

It is shown by the record book of the defendant, introduced in evidence, that the $3,000.00 note and loan obtained thereon were authorized by the company, and that the note of the company therefor, in pursuance of such authorization, was executed by Murphy as president, and by Patterson as secretary. There is no pretense that any officer of the company, except Murphy, had any knowledge of any of the other loans. After discounting the $1,000.00 note, and before it fell due, Murphy left the country, being largely in debt to the defendant. He was not served with summons in said action, and was not present at the trial thereof. The evidence further shows that the proceeds of the $1,000.00 note were credited by the bank on its books to defendant company, and by its checks drawn by W. W. Golightly, its manager, paid out through the bank, to the creditors of the company.

The question presented is: Did the court err in sustaining the demurrer of defendant to the evidence, and in rendering judgment thereon in favor of the defendant?

It is conceded by counsel for the plaintiff in error that Murphy, as president of the Laboringman's Mercantile & Manufacturing Company, had no inherent authority to execute the note for the company. In *First National Bank* v. *Kimberlands,* 16 W. Va. 579, GREEN, JUDGE, says: "The president of a bank *or of any other corporation* has, except to the very limited extent which we have above indicated, no inherent authority by virtue of his office to enter into contracts or agreements which will bind the corporation." In *Stokes* v. *New Jersey Pottery Co.,* 46 N. J. L. R. 237, 241, it is held: "In the absence of anything in the act of incorporation bestowing especial power upon the president, he has, from his mere official station, no more control over the corporate property and funds than any other director. The affairs of corporate bodies are within the exclusive control of their boards of directors, from whom authority to dispose of their assets must be derived. The act of a president or other officer, unless it is shown to pertain to his official duty or to be within the scope of his employment, cannot be regarded as the act of the corporation, and is not binding upon it. The authority requisite to charge the company must therefore be derived from the board of directors." Cook on Coprorations, Vol. 2, p. 1506, note, says: "The president and secretary have no inherent power to execute notes in the name of the corporation." It is not contended by the bank that Murphy had express authority from his company or its directors to execute or discount the note in controversy.

Plaintiff in error contends that, notwithstanding the unauthorized execution and discount of the note by Murphy, the company ratified his acts by holding him out as its agent and by retaining the proceeds of the note. Morawetz on Priv. Cor. Vol. 2, p. 595, says: "The doctrine of ratification must not be confounded with the doctrine of estoppel by acquiescence or *laches.* *Actual* ratification of an act involves a voluntary adoption of the act. Full knowledge of the act assented to, and an intention to adopt the act as the act of the corporation are therefore essential. A corporation can never be charged with an unauthorized act of its agents on the sole ground that the act

has been ratified by the shareholders, unless the shareholders had full knowledge of the act." The same rule applies to a ratification by the directors of a corporation of the unauthorized act of an agent or officer. The case of *National Bank* v. *Kimberlands,* point 8 of syllabus, holds that: "The directors of a bank may ratify any act done or contract made by the president without authority, which they could have authorized him to do or make."

On page 581, of the same case, the court says: "Evidence of powers habitually exercised by a cashier of a bank with its knowledge and acquiescence defines and established, as to the public, those powers." And this principle is equally true when applied to the president. But as the inherent power of the president is so much more limited than that of the cashier, the evidence of this character, from which the right to exercise unusual powers can be inferred, should be much stronger in the case of the president than in the case of the cashier of a bank. Not only may the authority of an officer of a corpration, as a bank, to do a particular act be inferred from proof of his habitual doing such acts with the acquiescence of the directors of the corporation, but where no such acts are proven, if any act or contract of such officer made without authority is subsequently ratified by the directors upon full knowledge of all the circumstances of the case, the corporation will be bound thereby as fully, as if the officer had been expressly authorized to do the act or make the contract. This ratification need not be shown by direct evidence that it was expressly approved by the board of directors, but such ratification may be inferred from their accepting the benefits of the act or contract. As if under the contract so made by the president or other officer money is to be paid to the corporation, and it is received by the corporation and applied to its use, even without the knowledge of the directors, if it is not returned, when it becomes known to the directors that it has been applied to their use, such conduct would be a ratification of the contract of such president or other officer."

There is nothing in this record showing the existence of such facts, as constitute a public holding out by the company that the execution and discount of the one thousand dollar note by Murphy was within the scope of his delegated authority, but the

record book of the defendant company does show that Murphy was expressly authorized to negotiate the three thousand dollar note. It does not appear that the directors had knowledge at the time of any of the other loans obtained from the Thompsons, Cruikshank or Baker. Murphy's conduct indicates an intention on his part to conceal his acts from the directors of his company. As soon as Cruikshank had placed his claim in the hands of an attorney for collection, Murphy went at once and paid the note, and took it up, fearing, no doubt, that suit might be commenced, and summons served on the proper officers of the company if he did not do so; and that this might lead to an investigation of the affairs of the company.

The stockholders and directors of the Laboringman's Mercantile & Manufacturing Company were bound to take notice of the entries in its books, made in the due course of its business, but no entry relating to the $1,000.00 note, or its proceeds, is shown therein.

Golightly says that his company had an account against the Davis Poultry Company, and Murphy its manager, for $1,044.-73; that, on request of Murphy, that account was credited with $1,000, paid by Murphy, as aforesaid. This entry on the books of the company certainly would not be notice of the execution and discount by Murphy of the one thousand dollar note. No person except Murphy and Weber, the president of the bank, are shown to have had any knowledge of the note transaction, until after the protest of the note.

Murphy had not been habitually executing and discounting notes, nor borrowing money in the name of the defendant with the knowledge or acquiescence of its directors. Neither was the execution or discount of the one thousand dollar note expressly ratified by the said directors, with or without full knowledge of all the circumstances of the case. But its proceeds were actually placed to the credit of defendant on the books of the bank, and appropriated by the company to its own use, by checking the same out to its creditors in payment of ·its debts. A corporation, like a natural person, may ratify, affirm, and validate any contract made, or act done in its behalf, which it was capable of making or doing in the first instance. 10 Cyc. 1069. Where the president of a corporation executes in its behalf, and within the scope of its charter, a contract which requires the concur-

rence of the board of directors, and the board, knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified the act. *Id.* 1073. "A leading principle in the law relating to this subject, is that where a contract is made by one assuming to act in behalf of a corporation, and for a purpose authorized by its charter, and the corporation, after knowledge of the facts attending the transaction is brought home to its proper officers, receives and retains the benefit of it without objection, it thereby ratifies the unauthoried act and estops itself from repudiating it. The reason is that it must exercise its option of affirming or disaffirming in whole and not in part; that it cannot disaffirm so much of the unauthoried act as is onerous, while retaining so much of it as is beneficial; that it cannot keep the advantage, while repudiating the burden; that it cannot disaffirm the contract, while keeping the consideration." *Id.* 1078.

In the case of *Bank* v. *Kimberlands, supra,* in which the facts are somewhat dissimilar to the facts in the case under consideration, the court applied the above quoted general principle, and held that: "The acceptance of the benefits of a contract made by the president for the bank is an implied ratification of such contract, and if money is received by its cashier for the bank under such contract, even when such receipt was unknown to the directors, it will be a confirmation of the contract, unless the money so received is returned, when its receipt becomes known to the directors." The directors of the defendant company had, or should have had, notice of the execution of the note in controversy, and of its disposition to the bank by Murphy, by reason of the present action, brought upon that note. But the company, having then received the benefit of the transaction, repudiated it, and did not, when sued, nor since that time, return to the plaintiff the money thus received and used by it. The failure of the defendant to return the money so received, when its receipt had become known to its directors, was and is a confirmation of the transaction.

It is suggested that, while there may be a recovery in such cases in an action of *assumpsit* for money had and received, this action *in debt* may not be maintainable, because it is alleged that defendant, by Murphy, its president, made its certain note, being the one in suit, but that the only evidence of

the alleged contract of defendant is the unauthorized note, upon which the action is predicated. "It is a general principle, which applies without regard to the mode of ratification that a voidable engagement cannot be ratified in part so far as it is beneficial to the corporation, and repudiated so far as it is deleterious." 10 Cyc. 1072. Hence, the receipt and use of the proceeds of the note, having been ratified by the company, by reason of its failure to return the money, when its receipt had become known to its directors, the note upon which the money was obtained from the bank was also thereby ratified.

For the reasons stated, we hold that there was and is a ratification by the company of the whole transaction; that this action *in debt* can be maintained by the plaintiff against the defendant company upon the note in controversy; and that the defendant is liable to the plaintiff thereon.

We therefore reverse and set aside the judgment of the court below, and enter such judgment as that court ought to have entered. It is therefore considered that the defendant's demurrer to the plaintiff's evidence be and the same is overruld; and that the plaintiff do recover from the defendant company, the said sum of one thousand and forty-two dollars, found by the jury, as aforesaid, with interest thereon from the 13th day of March, 1902, until paid, and its costs by it in the prosecution of said action expended.

*Reversed.*

### NOTE UPON APPLICATION FOR A REHEARING.

Defendant insists that plaintiff had no right of action on the note, if at all, until after its execution by Murphy had been ratified by the failure of defendant to return to plaintiff the money realized thereon; and that the defendant was not required to do this until its directors had full knowledge of the transaction.

It might be inferred from an expression in the above opinion that neither the defendant nor its directors had any knowledge of the note sued on, or of the disposition of its proceeds, until after the action was commenced. That feature of the case was not sufficiently discussed in the opinion, and, for that reason, this note is appended thereto.

The record shows that, on the first day of July, 1901, the

date of the maturity of the said one thousand dollar note, it was duly protested for the non-payment thereof, against all of the endorsers thereof; and that written notices of protest were signed by the notary and mailed on that day to the following named persons, informing them that the note had not been paid, payment thereof having been demanded and refused, and that they would be held responsible for the payment thereof. The said notices were under separate covers, and addressed to Davis, W. Va., to Laboringman's Mer. & M'f'g. Co.; N. B. Twigg, M. M. Phelps, W. E. Patterson, E. S. Muse, J. B. Guinard, F M. Houser, J. W. Baker, Samuel Buser, B. A. Stuckey, and Geo. W. Everett.

Section 7 of chapter 51 of the Code provides that the protest in the case of a negotiable promissory note shall be *prima facie* evidence of what is stated therein (or at the foot or on the back thereof, if signed by the notary) in relation to presentment, dishonor, and notice thereof. Section 8 of chapter 99 declares that the sending of a notice of protest or dishonor of any bill, note or other negotiable instrument by or through the mails, properly addressed to the last known post office of any party, shall be deemed equivalent to personal service of the notice on such party.

J. W. Baker, whose residence was Davis, W. Va., W. E. Patterson, Geo. W. Everett, J. B. Guinard and W. W. Golightly, were witnesses on the trial and said nothing as to the notices of protest. If the notices were not received by them, that fact could have been shown. Therefore, under the statute, without evidence to the contrary, we must hold that the above named parties, to whom notices were mailed, had notice of the note and of its presentment, and dishonor.