OF THE

# SUPREME COURT OF APPEALS

OF

# WEST VIRGINIA.

---

## CHARLESTON

### BANK *v.* WETZEL.

Submitted March 30, 1905. Decided April 25, 1905.

1. BILL OF EXCEPTIONS—*Order to be Entered by Clerk, and Not the Bill—Practice.*

    When a judge in vacation makes an order under section 9, chap-131, Code, 1899, showing that he has executed a bill of exceptions, and so certifies it to the clerk, the clerk must record the order in the law order book and attest it; but it is not necessary that the bill, or any part of it, be literally recorded in said book. (p. 3.)

2. BILL OF EXCEPTION—*Part of Record by Identification per se.*

    If a bill of exceptions, though bearing no letter, number or other mark of identity, do of itself by its own matter and character identify itself as the bill mentioned in the order of court or the judge certifying its execution, the bill is part of the record. (p. 3.)

3. NEGOTIABLE NOTES—*Acts of Cashier of Bank Beyond His Powers Does Not Release Surety on Note.*

    A cashier of a bank has no implied power, merely by virtue of his office, to receive money for interest in advance on a note owned by the bank and agree to extend time of payment and thus discharge an endorser from liability. (p. 5 & 8.)

4. NEGOTIABLE NOTES—*Notice of Protest to Decedent, Received by Admr., Good.*

    A notarial notice of protest of non-payment of a note addressed to an endorser as if living, when the endorser is dead, if actually received by his administrator, is good to charge such endorser's estate. (p. 3.)

5. NEGOTIABLE NOTES—*Protest and Notice—When Evidence of Required—Practice.*

   To require proof of protest and notice of non-payment when the same are averred in a declaration, they must be put in issue by a plea such as will call for such proof.  (p. 4.)

Error to Circuit Court, Jackson County.

Action by the Bank of Ravenswood against Flora Wetzel, administratrix of C. C. Smith.  Judgment for defendant, and plaintiff brings error.

*Reversed*

C. E. HOGG, for plaintiff, in error.

J. M. HARPER, STARKEY & PARSONS, and WALTER PENDLETON, for defendent in error.

BRANNON, JUDGE:

R. T. Wetzel made a promissory note for $1,250.00 payable to B. D. Williams at the Bank of Ravenswood, which was endorsed by Williams and next by C. C. Smith.  The bank brought debt against Flora Wetzel, administratrix c. t. a. of Smith.  The administratrix filed two pleas in confession and avoidance, in effect averring that Smith was an accommodation endorser for Williams, and that the bank, in consideration of $34.15 paid as advance interest by Wetzel, after maturity of the note, agreed to give Wetzel four months further time for payment, without the knowledge or consent of Smith or his personal representative, and thereby released him from liability on the note.  The plaintiff replied generally to the pleas.  The case was tried by the court in place of a jury, and the court found and gave judgment for the defendant, and the bank brought the case to this Court by a writ of error.  Smith died before the maturity of the note.

Counsel for defendant says that the bill of exceptions is not part of the record, as the paper appearing in the printed record purporting to be a bill of exceptions has no ear-mark by letter, number or otherwise to identify it.  The paper begins with the title of the case, and offers itself as a bill of exceptions by the usual opening, "Be it remembered that upon the trial of the above entitled cause," certain evidence was given, giving that evidence in full and in all respects showing that

such evidence belongs to the case, and the evidence itself showing that it belongs to the case. The bill is signed by the judge, his certificate stating that it is all the evidence given in the case, and his order under the caption of the case certifies the bill to the clerk, with direction to him to enter that order in the law order book, and it is certified by the clerk as of record. It is true that no number or letter identifies the bill; but it ear-marks itself as belonging to the case. True, *McKendree* v. *Shelton*, 51 W. Va. 516, requires a paper made part of a bill of exceptions to be in some way marked for identity; but if its character is given with sufficient certainty to safely identify it, as in this case, it is enough. If a bill of exceptions should say that a deed from A to B conveying one hundred acres of land, or dated on a certain date, that would identify that deed, without mark or letter. Is it meant by counsel that the bill, being made in vacation under Code 1899, chapter 131, section 9, must be spread in its every word on the order book? *Wells* v. *Smith*, 49 W. Va. 78, and *Craft* v. *Mann*, 46 *Id.* 478, in saying that bills of exception certified to a clerk must be entered upon the order book, do not mean that they shall be in every word spread on the order book. The words of the statute are those used in those cases; but it was never meant to require almost the impossible, to fill order books, at the expense of great prolixity and costs, by requiring literal entry. It is simply intended that the judge's order shall be recorded to show that a bill of exceptions was made, just as an order made in term so certifies. It is not required to be more definite in the one case than in the other. If the order is of record, and you can identify the bill by it, it is enough. The public officer, the clerk, preserves and under his oath copies the right paper in the appeal record. The order made in term does not spread the bill at large on the record. It simply notes that a bill was executed in the particular case, and orders it to be considered a part of the record. It only certifies it as having been made, and if the paper identifies itself as a bill of the case, it is good.

The defense makes the point that there was no sufficient valid notice of protest, because the notary who gave it was a stockholder, and because it was addressed to Smith as if living when he was dead. I do not see that the matter of in-

terest would invalidate the protest. The statute excluding the evidence of a witness against a dead party does not apply. As to interest, the holder himself may give notice. If it be said that his protest could not be read as evidence, that is immaterial, owing to the fact that Mrs. Wetzel swears as a witness that she received that notice. And that fact dispenses with further discussion of this matter. A further answer to this point is that there was no plea putting that matter in issue, *nil debet*. *Williams* v. *Bartlett*, 72 Tenn. 620. Now, the claim is that the notice should have been addressed to the administratrix. What is the object of notice? To give notice to the party if living, or his personal representative, if dead, of the non-payment of the note. Personal notice does this. Written notice also. Just so the proper party get notice, that suffices, as the sole and only purpose of notice is accomplished, that is, a warning of non-payment. To require more than this would he without reason and deny justice on barren technicality. *Moore* v. *Moore*, 22 La. Ann. 227; 2 Rob. (new) Prac. 207; *Beale* v. *Peck*, 12 Barb. 245; *Drexler* v. *McGlynn*, 99 California 143; *Smalley* v. *Wright*, 11 Vroom 471, 2 Daniel, Neg. Instr. section 1000.

As to further indulgence: The evidence conflicts as to whether the payment of $34.15 was made as a partial payment only, or as interest in advance for extension of time of payment. My conclusion is that as the burden of proof here is on the defendant, she has not sustained the point that further time was given. I think the oral evidence, and the record in the two books of the bank, show that the said $34.15 was simply a partial payment. If this is so, there is nothing in this defense for want of evidence; and if this is not so, still that defense must fail for want of law to sustain it. Concede that there was an agreement by the cashier to receive the $34.15 and grant indulgence. The cashier had no implied authority to do this. No express authority is proven; no ratification by the bank of this loose, unwarranted act is proven. Counsel cites 2 Am. & Eng. Ency. L. (1 Ed.) reading: "The cashier is the chief executive officer through whom the whole financial operations of the bank are conducted. His acts within the scope of the general usage, practice and course of business of the bank will bind the bank in favor of a third person possessing no

other knowledge." A cashier has very wide powers. The Supreme Court says in *U. S.* v. *City Bank*, 21 How. 356. "The court defines the cashier of the bank to be an executive officer by whom its debts are received and paid, and its securities taken and transferred, and that his acts, to be binding upon a bank, must be done within the ordinary course of his duties. His ordinary duties are to keep all the funds of the bank, its notes, bills and other choses in action, · to be used from time to time for the ordinary and extraordinary exigencies of the bank. He usually receives, directly or through subordinate officers, all moneys and notes of the bank, delivers up all discounted notes and securities when they have been paid, draws checks to withdraw the funds of the bank where they have been deposited, and as the executive officer of the bank, transacts most of its business." 4 Thompson on Corporations section 4741. He has full power within the just scope of his authority, according to the general usage, practice and course of business in such case. Cook on Corp. section 718; Clark & Marshall, Corp., section 705. But there is at least one notable, logical, necessary exception, essential to protect stockholders against loss and wreck of the bank; to protect them against what is quite common, the loose practice and unwarranted assumption of power by cashiers. A cashier has no implied power, merely by virtue of his office, to give away, surrender or release the bank's securities. He can do no act which so operates. When he does this he is outside the scope of his authority, is acting not according to usage, practice ·or usual course of business, but in plain disregard of the rights of the bank. "The cashier of a bank, unless specially empowered to do so, has no authority to release, otherwise than in due course of business and on payment, the makers of notes or other debtors of banks, or to release sureties or endorsers." Clark and Marshall on Corporations 2158. Such is the current of authority. 1 Daniel Neg. Instruments section 395 (1 Ed.) says: "It is well settled that neither the president nor the cashier of a bank has authority, *virtute officii*, to give up or release a debt or liability to the bank, or make any admission which would release any party to an obligation, negotiable or otherwise, due to the bank—for such purposes the board of directors only having the power to act." As Thompson on

Corporations, Vol. 4, section 4750, says, even the directors have no power to release or give away assets which it is their duty to preserve. "A cashier cannot *virtute officii* release a surety upon a note held by the bank, even though the bank holds other security to which it might resort. Special authority is necessary to justify such release." Morse on Banking, section 169.

Counsel for the bank aptly says: "The release of a debtor is an act of ownership, and not of administration," citing many cases, among them *Union Bank* v. *Bagley*, 10 Rob, (La.) 43; *Hodge* v. *First Nat. Bank*, 22 Grat. 51; *Ecker* v. *First Nat. Bank*, 59 Md. 291; *Gray* v. *Bank*, 81 Md. 631. The case in 22 Grattan 51 involved the right of a president to give a certificate that a note in the hands of the bank was given as a mere voucher, not as evidence of debt. President Moncure said: "But certainly neither the president nor cashier could, *virtute officii*, give up a debt or liability of the bank, or bind the bank by such an admission." Counsel for the bank further justly says that the act in question is equivalent to the surrender of the note, and the acceptance of a new note without Smith as an endorser; in effect the discharge of the old note by the acceptance of a new note of the maker only, citing *Bank* v. *Hart*, 20 L. R. A. 780. When a note is extended as to payment, the usual banking usage requires a new note by makers and endorsers. Can a cashier depart from this usuage with safety, accept interest in advance, and agree to extend time without consent of the endorsers? This is not the execution of usual powers of office. It is the waste of assets. Any other rule would be ruinous to stockholders. *Wakefield* v. *Truesdell*, 55 Barbour 602, so much relied on, is not from a court of high authority. It does not discuss the question. It cites not a single authority.

In view of what has been said as to the want of power in the cashier to grant indulgence, it is not material to advert to letters written by the cashier a good while after the date when he is said to have granted further time, and which are claimed to contain admissions that he had granted further time to Wetzel. However, I will say that on authority above quoted from Daniels and Judge Moncure such admissions are abortive. They do not bind the bank. Elementary law found in 1 Greenleaf on Evidence section 113,

shows that such admissions are not admissible against the bank, because made a considerable time after the date of the act of the cashier granting indulgence. That matter was closed. Such admissions are not part of the *res gestae*.     See Am. & Eng. Ency, L. (2 Ed.) 695; 1 Jones on Evidence section 270; *Hawker* v. *B. & O. R. R. Co.*, 15 W. Va. 628; *Corder* v. *Talbott*, 14 W. Va, 277; *Smith* v. *Betty*, 11 Grat. 752, 19 S. E. 787, *Lake* v. *Tyree*.    That is one reason why those letters amount to nothing as admissions, they being mere statement as to past occurrence. Another reason is that the cashier has no power to bind the bank by such admissions made at any time.

The point is made that as the plaintiff did not file a special replication denying the authority of the cashier to extend the time of payment, it must be taken for a fact that he had such authority.    No plea avers that the cashier had authority to extend the time.    The pleas filed did not say that the cashier extended indulgence and had authority to do so, and thus did not put his authority in issue.    It did not say that the cashier granted this indulgence; it said that the bank did so.    The plaintiff denied this by his general replication to the pleas.    It was not necessary to file special replication. Under the pleas in confession and avoidance, the defendant had to show extension of time by competent authority, and to do this had to show that as the cashier extended the time he had power to do so.    She had to show an extension binding the bank under the general replication that the bank did not do so.

We reverse the judgment and render judgment for the plaintiff for $1,474.70. with interest from the 13th day of November, 1901, that being the date of the judgment of the circuit court, and the costs of the plaintiff in that court expended, payable out of assets in the hands of the administratrix.

ON REHEARING.

It is only that labored argument was made on rehearing that I write a second opinion in the case.    Reconsideration has only confirmed my opinion that the defense to the action is destitute of strength in law or justice in fact.    It is only a hard case on Smith's estate in the same sense in which

every case where a surety pays a just debt for an insolvent principal is hard on the surety. Promptly on maturity the bank gave the administratrix notice of the non-payment and protest. She says she received and understood this notice. She thus was informed that the bank looked to Smith's estate for payment. She could have given notice to the bank to sue, or sued herself in equity to compel the principal to pay, if it would have been of avail, the principal being insolvent. Can it be contended successfully that notice to sue could not have been given the bank because it had bound itself to extend time by taking interest in advance for renewal? It cannot for several reasons. To release a surety by extension of time, the extension must be based on valuable consideration, so as to tie the hands of the creditor and disable him from suing. *Bank* v. *Parsons*, 45 W. Va. 688. Concede that payment of interest in advance with promise to extend for a fixed time will discharge a surety, where the creditor is an individual. *Parsons* v. *Harold*, 46 W. Va. 122, So it would where the creditor is a bank, if the promise of extension is made by the directors. But to tie the hands of a bank, and prevent it from suing, the act of extension must be a valid act, one binding it, else its power to sue is not affected, and the surety can notify it to sue or himself sue. Extension "will not release sureties unless the bank had entered into an agreement, whereby it bound itself *legally* to grant such indulgence." *Bank* v. *Evans & Dorsey*, 9 W. Va. 374. All agree that it must be a valid, binding act of extension to tie the hands of the bank. *Custon* v. *Dunlap*, 23 Amer. Dec., 194. Here we have the same question discussed in the first opinion. Had the cashier power to make a promise to extend time and prevent suit by the bank or Smith's estate? Now, all would say that the law given in 5 Cyc. 475 is sound, that a cashier has no authority "to release the maker of a note, or a party or surety thereon." Yet it is claimed that he may by extending time indirectly do what he can not directly do, release a surety. What more vital act is to be done by a bank than making loans or renewing them? The universal usage is, that the directory in assembled meeting does this. We know this by judicial cognizance, and the evidence shows that such was the rule with this bank—none but the direc-

tors having this power. Our Code, chapter 53, section 49, says that the directors of a corporation "shall have power to do, or cause to be done, all things that are proper to be done by the corporation." And chapter 54, section 79, provides as to banks that the directors "shall administer the affairs of the company." Surely the making and renewal of loans are acts of gravity, deeply concerning a bank, not within the ordinary powers of a cashier, under the usual course of business proper to be done only by the directory, and committed to it by those statutes properly construed. Is not the extensions of time for a future period like the expired period, another loan, or a renewal? The cashier not merely loans, but by the loan releases an indorser. Morse on Banks, section 117, says: "Thus the making of discounts is an inalienable function of the directors. They cannot part with it, or invest any officer or officers with it. It vests with them alone and exclusively. It is a power of that degree of vital importance that it cannot be taken out of the policy of the general principle, that powers of a public nature, given by the Legislature, cannot be delegated. The Legislature imposes upon the board the duty of taking charge of all those matters of business upon the wise and skillful conduct of which the property of the institution and the safety of persons dealing with it depend. This duty they cannot shift in whole or part upon others, and it covers no department of banking more unquestionably than the making of loans and discounts." Abundant authority supports the statement of the first opinion that a cashier cannot release a surety or liability, or make any admission releasing any party to a debt—but only the directors can do so, if they can, in addition to authority there cited. *Gray* v. *Farmers' Bank*, 81 Md. 65, is apt in this case. It holds that a cashier has no power to accept a new note so as to discharge a surety on the first note. Money was paid in, and it was claimed that it was advance interest. It was held that "if the entry on the books of the bank were to be construed as payment of interest in advance, and an agreement to extend the time, so as to discharge the surety, then the cashier had no authority to make such contract or entry." It was held that the money should only be applied *pro tanto* on the note. In our case the cashier entered on the note, "May 3rd, 1898.

Discount paid for four months, $34.15, to Sept. 3, 1898. Pd. by R. T. Wetzel, which is applied as a credit on within note." Some evidence goes to show that the cashier began the endorsement and before completing it remarked that he had no authority to extend time, and added the words of credit. It is claimed that he later added the words of mere credit. Say so. Say that he received the money as discount and promised to extend time, which he denies. Under that Maryland case, and a volume of law, that entry, that promise, go for naught, do not bind the bank. We are cited 5 Cyc. 473 for the words that a cashier may "extend time for paying a note." It is inconsistent with the passage quoted above from 5 Cyc. 475. Only one case is cited, and it is relied on as pointed authority. *Wakefield Bank* v. *Truesdale*, 55 Barbour, 602. It is counter to a river of authority and wholly unsatisfactory in itself. The real point of the case was whether the payment was *intended* to extend time. The opinion is short. As to the authority of the cashier to extend time the case gives no consideration, but in a few closing lines simply asserts the power, giving not a syllable of authority. Moreover, it comes from a court not of high authority, the supreme court of New York, it not being the highest court of that state. The Court of Appeals is.

It is claimed that the bank ratified the act of the cashier. Of this there is no evidence. The bank books show that the $34.15 was entered on them as a partial payment, not as advance interest. Protest was made and notice given of it. No one but the directors could ratify. They did not. They would have to do so by resolution. They act collectively. There is no evidence they knew of the alleged extension. Ratification only occurs where there is knowledge. The ground on which ratification is mostly rested is the retention of the $34.15. Now, the open bank books showed it to be a partial payment, if the directors inspected them. So did the back of the note. We are cited to our case of *Third National Bank* v. *Laboring Man's Co.*, 49 S. E. 544. That case is no authority in this case. There the president of a corporation made its note payable to him, and he negotiated it to a bank and had its proceeds credited in the bank to his company, which used the money. The company did not know of the

making of the note, but used the money. It denied its lia-
bility on the note. As it got the benefit of the money, and
did not return it to the bank discounting the note, that was
held to ratify the note and bind the corporation. There the
note was denied. The corporation could not keep the money
and be free of the note. In the present case the note is
unquestioned—the debt conceded, and this being so the
bank could lawfully retain the $34.15 as part payment,
and having authority to retain the money, its act did not
ratify the unwarranted act of the cashier, but was justified
by its note, as held in the case cited above from 81 Md.

We therefore adhere to the judgment made on the first
hearing.

*Reversed.*