# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## DAVIS ET AL. v. ROCKINGHAM INVESTMENT COMPANY.

### July 6th, 1892.

1. CORPORATIONS — *Treasurer* — *Checks* — *Notes* — *Endorsee.*—Unless taken away or restrained, authority is inherent in the treasurer of a corporation to draw checks; but the power to bind it by endorsing negotiable notes is not, and he that takes such note by endorsement from an officer of the corporation does so at his peril.

2. IDEM—*By-laws*—*Case at bar.*—A by-law of a corporation provided that the president, or, in his absence, the vice-president, shall sign all deeds, notes, and bonds of the company; and no authority was given to the treasurer or "general manager" to endorse such notes. A note for $1,000, payable to the company, was endorsed by the treasurer or "general manager" and negotiated, and its proceeds placed in bank to the credit of a brother of said treasurer, who afterwards gave the latter a draft for the proceeds; but the draft was not paid, because the drawer's balance had, in the meantime, been checked out. The company got none of the proceeds. The holder of the note having been enjoined from collecting it, and evidence on both sides taken—

HELD:

The circumstances are not sufficient to warrant an implication of authority in the treasurer or "general manager" to bind the company by endorsing the note.

Appeal from decree of hustings court of city of Roanoke, rendered May 30th, 1892, in the chancery cause wherein the Rockingham Investment Company was complainant and ·Thomas E. Davis *et al.* were defendants. The decree being ·adverse to the latter, they appealed. Opinion states the case.

*Griffin & Glasgow*, for appellants.

*Phlegar, Berkeley & Johnson*, for appellee.

LEWIS, P., delivered the opinion of the court.

The single question to be determined is, whether E. E. Cole, as secretary and treasurer of the Rockingham Investment Company, had authority to endorse the note in the bill mentioned. The note was a negotiable note for $1,000, dated November 10, 1890, made by one George R. Cubben, and payable to the Investment Company twelve months after date, at the office of the Traders' Loan, Trust and Deposit Company, in the city of Roanoke. On the 16th of September, 1891, the note was sold to the appellant, Davis, in Parkersburg, West Virginia, by H. G. Cole, to whom it had been entrusted by E. E. Cole, to be negotiated for the company, after having been endorsed by E. E. Cole as secretary and treasurer. The sale was effected through F. M. Durbin, then cashier of the First National Bank of Parkersburg, and the proceeds were placed to the credit of H. G. Cole in that bank. A few days afterwards, upon his return to Roanoke, the latter gave to his brother, E. E. Cole, a draft for the proceeds of the note, but when presented at the bank the draft was not paid, because the drawer's balance had, in the meantime, been checked out. It is admitted that H. G. Cole is insolvent.

In this state of things the company filed its bill in the court below, alleging that the note was endorsed and negotiated without its authority or consent, and praying for an injunction, and that the note be delivered up to the complainant, and for general relief.

Depositions were taken, and when the cause came on to be heard the prayer of the bill was granted by the decree complained of.

The appellant concedes that there was no express authority on the part of the secretary and treasurer of the company to endorse the note in question, but contends that he had such authority by implication. The contention, in other words, is

that Cole acted as the general manager and fiscal agent of the company, and was held out to the public as having the general authority implied from such a position; that, by the silence and acquiescence of the company, he was suffered to draw drafts and checks, and to endorse notes payable to the company, and that the company is consequently bound by his acts within the scope of such implied authority.

The company was chartered for the purpose, principally, of buying and selling real estate; and has, besides a secretary and treasurer, a president, a vice-president, and a board of directors. One of the by-laws provides that the president, or, in his absence, the vice-president, shall sign all deeds of the company, and all notes and bonds of the company. Cole, however, as a witness for the defendants, testified that, as secretary and treasurer, he "looked after the business of the company generally"; that there was a committee who looked after all the real estate transactions, but that all the other affairs of the company were in his charge. He testified, moreover, that prior to the transaction in question he endorsed and negotiated several notes of the company, and that this was done with the knowledge and acquiescence of the company.

This, however, is contradicted by the evidence for the complainant. Thus, Asberry, the vice-president of the company, testifies that there was no other regulation in regard to the signing of papers and contracts than that prescribed by the by-law above mentioned. He also says no authority was ever given, within his knowledge, to the secretary and treasurer to endorse the notes of the company, and that the company got none of the proceeds of the note in question. And in answer to a question, who was managing the affairs of the company in the summer and fall of 1891, he answered: "Our business was transacted, in the absence of the president, by myself as vice-president, with the sanction of the executive committee, composed of T. S. Miller and J. W. Coon."

The president was also examined as a witness, and testified that, as far as he knew, no authority was given to Cole to endorse the note in question.

That Cole, as treasurer, drew all the checks of the company, is admitted. But that is a very different thing from endorsing and selling its negotiable paper. The authority to draw checks may be said to be inherent in the office of the treasurer, unless taken away or restrained; but the power to bind the company by endorsing negotiable notes is not.

It is true he had previously endorsed and sold two negotiable notes of the company, aggregating less than five hundred dollars, and entered the transaction on the books of the company, and that this was just before a meeting of the directors, in August, 1891. But he admitted, on cross-examination, that the attention of the board was not specially called to the transaction; and although he says the officers of the company were afterwards informed of it, and raised no objection, yet he does not say, and there is nothing to show, that they were informed of it before the endorsement of the note in question. Still less ground is there for the inference that Davis purchased the note relying upon the recognition of the company of any prior similar transactions on the part of Cole as an officer of the company.

Nor does the evidence support the contention of the appellant that the officers of the company knew, before the negotiation of the note, that it had been sent to Parkersburg to be sold. On the contrary, Coon testifies that on the 14th of September, 1891, he and Asberry, the acting president, had a conversation in regard to the pecuniary affairs of the company, in the course of which he offered to loan the company $1,000 upon collateral; that Asberry thereupon directed Cole, as treasurer, to deliver to him (Coon) the Cubben note, as such collateral; to which Cole replied " all right." At that time the note was in Parkersburg, though the fact was not

divulged by Cole for several days afterwards, and not until Coon applied to him for the note. In the meantime it had been sold to the appellant. So that, instead of informing Asberry and Coon, two of the managers of the company, what he had done with the note, when he was directed to deliver it to Coon he concealed the fact until after the appellant had purchased it. " This was the first," says Coon, " that I ever knew the note had been sent away." And there is no evidence that any other officer of the company, except Cole, knew of it sooner.

It is true Cole testifies that in May, 1891, he suggested to the vice-president the desirability of negotiating what paper they had on hand, to raise money, and that this view was acquiesced in. But when asked whether anything was said about *his* (Cole's) negotiating it, he answered: " No; that was not mentioned, as far as I can recollect."

He also says he took the paper to Parkersburg in June, for the purpose of having it discounted, but did not succeed, and that this was known to the officers of the company. But when pressed, on cross-examination, he admitted that there was a meeting of the directors, the day he left for Parkersburg, and that he couldn't say whether he brought the matter to the attention of the board or not, but did say he mentioned it to the vice-president, who was elected that day. He does not say, however, that this was in the absence of the president, nor does he say he intimated to the vice-president his purpose to endorse the paper himself, or that the president would not be asked to endorse it.

In short, it is clear that authority on Cole's part to endorse the note in question has not been established; that the appellant, consequently, acquired no title to it, and that the decree of the hustings court is right, and must be affirmed.

It is proper, however, to add that there is no question as to the *bona fides* of the appellant. He gave value for the note,

supposing the endorsement thereon was authorized and valid. But he did so at his peril, and must bear the consequences. The law in such a case requires clear proof of the authority of an agent to endorse negotiable paper, and the rule ought to be strictly observed.

DECREE AFFIRMED.