CASE 94—PETITION EQUITY—NOVEMBER 29.

Chemical National Bank of New York v.
Wagner, Assignee, &c.

First National Bank of New York v. Wagner,
Assignee, &c.

APPEALS FROM CAMPBELL CHANCERY COURT.

1. THE PURCHASER OF NEGOTIABLE PAPER, ISSUED IN THE NAME OF
A CORPORATION by one who professes to act as agent for the cor-
poration, takes the paper at his peril as to the authority of the
agent, unless the agent acted within the scope of his general
authority in issuing the paper and the purchaser had no notice,
either of the fact that he acted wrongfully in the particular case
or of any fact sufficient to put him on inquiry as to that matter.

2. POWERS OF TREASURER OF CORPORATION.—The treasurer of a
corporation, whose duty it was under the by-laws of the company
to "have charge of the finances of the company and sign all
checks and receive and account for all moneys and property com-
ing into his hands," and, in the absence of the president and vice-
president, to act in their stead as a "business committee," had no
authority to issue notes in the name of the corporation unless he
had authority to do so as "business committee;" and if he had
such authority in that capacity the absence of the president and
vice-president was a condition precedent to its exercise.

3. THE POWERS OF THE "BUSINESS COMMITTEE" were confined to the
transaction of the legitimate business of the corporation, subject
to the direction of the board of directors, and in the absence of

authority from them the committee had no power to issue notes in the name of the corporation.

4. AN AGENT OF A CORPORATION MAY BIND HIS PRINCIPAL if he acts. under immediate instructions from some superior agent authorized to thus act, or from the board of directors.

5. THE PRESIDENT OF A CORPORATION HAD NO POWER to authorize the treasurer to issue notes in the name of the corporation for his personal benefit.

6. NOTES ISSUED IN THE NAME OF A CORPORATION, which show upon their face that they were issued by the payee as agent of the corporation, are *prima facie* void at the option of the corporation, and holders can not recover upon them unless they can show that the company, by its superior officer, authorized so to do, or by its. board of directors with like authority, authorized the agent to thus issue the notes.

WM. WORTHINGTON FOR CHEMICAL NATIONAL BANK.

1. The verified proof of claim—in substance, though not in name, a *petition*—should have been taken as true in the absence of a. written objection or exception or verified ground of defense. (Francis v. Smith, 1 Duv., 121, 125 ; Homer v. Harris' Ex'or, 10 Bush, 357; Dobyns v. Dobyns' Ass'ee, 79 Ky., 95 ; Longdale Iron Co. v. Swift's Iron and Steel Works, 12 Ky. Law Rep., 848; s. c., 91 Ky., 191.)

2. As the notes were dated and made payable in the State of Ohio, their scope and effect are to be determined by the law of that State if the corporation had power to issue them at all. (Stevens v. Gregg, 89 Ky., 461.)

3. One who purchases such instruments for value in the ordinary course of business, before maturity, takes them free from all. defenses of which he has no notice. (Woolfolk v. Bank of America,. 10 Bush, 504 ; Johnson v. Way, 27 Ohio St., 374; Kitchen v. Loudenback, 26 N. E. Rep., 979.)

A lender who takes such instruments as collateral security in substitution for other security received by him when he made the loan, as did the Chemical National Bank in the case at bar, is a purchaser for value in the ordinary course of business. (Roxborough v. Messick, 6 Ohio St., 448.)

4. A corporation may exercise its charter powers any where if not forbidden by the law either of its domicile or of the place of performance. (Bank of Augusta v. Earle, 13 Peters, 588 ; Morawetz on Corporations, secs. 958–961; Lathrop v. Commercial Bank, 8. Dana, 114 ; Phœnix Ins. Co. v. Commonwealth, 5 Bush, 68.)

5. There is no evidence in the record that the law of Ohio forbids Kentucky corporations or any foreign mercantile corporation to make contracts within that State; nor could such evidence have been

produced. (Hanna v. International Petroleum Co., 22 Ohio St., 625; Newburg Petroleum Co. v. Weare, 27 Ohio St., 343; Second National Bank v. Hall, 35 Ohio St., 158.)

6. Where a corporation has power to issue negotiable paper for value, its paper in the hands of a *bona fide* purchaser for value before maturity, is as free from defense of want of consideration as that of an individual under like circumstances: (2 Morawetz on Corporations, secs. 597–602; 1 Daniel on Negotiable Instruments, sec. 386.)

7. Where a writing purports to be an obligation of a corporation to the individual who as officer executes it, it is not necessarily void, but only in case the officer had no authority to issue it in that form. (1 Morawetz on Corporations, sec. 527; Mecham on Agency, secs. 66–68; Bell v. McConnel, 37 Ohio St., 396.)

8. One purchasing negotiable paper without inquiry, and without actual notice of defects, takes it subject only to the risk that inquiry would have established the existence of an infirmity suggested by the face of the paper. If inquiry would have shown the non-existence of infirmities so suggested, it matters not what other defenses there may be; the purchaser is not affected by them. (Willis v. Vallette, 4 Met., 186, 190; 4 Kent's Comm., 179; Railway Co. v. Sprague, 103 U. S., 756; Wilson v. Metropolitan Ry. Co., 120 N. Y., 145; Metropolitan Ry. Co. v. Kneeland, 120 N. Y., 134; Cowing v. Altman, 71 N. Y., 435; McSparran v. Neely, 91 Pa. St., 117; The Citizens' Savings Bank v. Blakesley, 42 Ohio St., 645.)

9. The extension of time is a valuable consideration. (2 Daniel on Negotiable Instruments, secs. 1272, 1329.)

W. B. BURNET FOR FIRST NATIONAL BANK.

1. Being payable in New York, these notes are to be construed by the law of that State. (Tyler v. Trabue, 8 B. M., 307; 2 Stanton's Ky. Dig., 1016; Hyatt v. Bank of Ky., 8 Bush, 198; Woolfolk v. Bank of America, 10 Bush, 504; Stevens v. Gregg, 89 Ky., 461.)

2. Assuming for the purpose of argument that the form of the notes was such as to put the purchaser on inquiry, the inquiry would not be general into all the possible defects and defenses, but simply as to the authority of Matthews, treasurer, to sign the name of the corporation to the paper. (Wilson v. Metropolitan Ry. Co., 120 N. Y., 145.)

JOHN S. DUCKER FOR APPELLANTS.

Brief not in record.

J. C. WRIGHT, C. J. HELM AND C. L. RAISON FOR APPELLEES.

No brief in record.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The Swift Iron and Steel Works Company is a corporation, created by the Legislature of this State in January, 1871. At the time of the transactions in controversy in this case, E. L. Harper was president of the company and J. H. Mathews was its treasurer; there were also a vice-president and board of directors of said company. The powers of each are set forth in the company's by-laws, as follows: "Sec. 3. All contracts and obligations binding the corporation may be signed by the president or vice-president." "Sec. 5. The treasurer shall have charge of the finances of the company, and shall sign all checks and receive and account for all moneys and property coming into his hands." "Sec. 8. There shall be a business committee consisting of the president and vice-president, who shall have full power to transact the business of the company, under such restrictions as the board of directors may devise from time to time." This by-law was amended so as to authorize either member of the business committee to act in the absence of the other, and in the absence of both "the treasurer shall have power to act as such committee."

J. H. Mathews, in April and May, 1887, drew six promissory notes in the name of the Swift Iron and Steel Works for twenty-five thousand dollars each, due respectively in four months, and signed by him as treasurer and made payable to himself individually, which he . then indorsed individually and delivered to E. L. Harper, who was then vice-president of the Fidelity· National Bank of Cincinnati. Said Harper, as vice-president of the Fidelity National Bank of Cincinnati, indorsed said notes to the appellants—two to the Chemical National

Bank and four to the First National Bank—to collaterally secure loans of money to the Fidelity National Bank. Not long thereafter the Fidelity National Bank and the Swift Iron and Steel Works, becoming insolvent, made an assignment for the equal benefit of creditors. The appellants filed these collaterals in the suit by the assignee of the Swift Iron and Steel Works to have its affairs settled and assets distributed, for the purpose of obtaining their *pro rata* thereon. The lower court rejected their claim upon the ground that J. H. Mathews, as treasurer, had no authority to issue them payable to himself individually; hence, they were void at the instance of the company. The appellants contend that said Mathews did have authority to issue said notes; but if he did not the notes were negotiable paper and they were purchasers thereof for value, having no notice of any infirmity in them.

It is conceded, for the sake of the argument, that the notes, dated at Cincinnati, Ohio, indorsed and payable to order at a bank in New York, were, by the laws of Ohio and New York, negotiable paper, and that the appellants, as innocent holders thereof for value, are not prejudiced by any equities existing between the antecedent parties, of which they had no notice, or notice of such facts as should put them upon inquiry as to the existence of the antecedent equities. But the rule protecting innocent purchasers of negotiable paper against antecedent equities does not apply to the authority to make the paper. The holder of the paper purchases it at his peril in reference to the authority to make it. *Caveat emptor* applies to him in full force in reference to the authority to make the paper. For instance, if the person making the paper pro-

fesses to act as agent for another, the person purchasing it must look out for the agent's authority to make the paper; the purchaser purchases at his peril as to the authority of the agent. The same rule applies to an agent of a corporation issuing paper in the name of the corporation; the purchaser of the paper buys it at his peril as to the agent's authority to issue it. The only exception is, if the agent of the corporation, in issuing the paper, acts within the scope of his authority, but in the particular he acted wrongfully, of which the purchaser for value had no notice, nor of such facts as should put him upon inquiry as to the authority in the particular case, then the innocent purchaser would be protected upon the ground that the corporation, whose agent acted within the scope of his authority and with the consent of the corporation, should suffer by the wrongful act of the agent acting within said scope, rather than an innocent purchaser.

So the question is, did Mr. Mathews have authority to issue these notes? We think not, for the following reasons: By the fifth by-law, *supra*, his authority is confined to taking charge of the finances of the company, signing its checks, receiving and accounting for its money coming to his hands; and, by an amendment, to act as a business committee in the absence of the president and vice-president. Now, by the fifth by-law, he had no authority to issue said notes, and there is no pretense that he issued them as a committee. But suppose he did, had he the authority to do so? We think not; because, in the first place, if he could issue them at all he could do so only in case of discharging the business of the company in the absence of the president and vice-president, and it is not

shown that they were absent, which absence is a condition
precedent to such authority; and, in the second place, the
business committee—including the president, vice-presi-
dent and treasurer—were confined to transacting the
legitimate business of the company, subject to the direc-
tion of the board of directors, and it is not shown that
they conferred authority upon the committee to issue
these notes or any notes of the kind, which would be
beyond the scope of their authority as a business commit-
tee.  Nor is it shown that they, or either of them, ever
exercised such authority, with or without the authority of
the board of directors, save the treasurer's action in this in-
stance, which action was an attempt by the treasurer to
bind his principal, as its agent, to pay him as principal the
sums that the notes called for.  To allow the agent to thus
bind his principal, without authority from him to do so,
would at once destroy good faith on the part of the agent
and become the most glaring fraud; to prevent which, and
to protect the principal, the law declares such transactions
void at his instance.  The principal may give authority
to his agent to thus bind him, and an agent in like
manner may bind the corporation he represents, if he
acts under the "immediate instructions from some other
superior agent" authorized to thus act, or "from the
board of directors."  (See 1 Morawetz on Corporations,
sec. 527.)  It does not appear that the board of directors
authorized J. H. Mathews to thus act, and if Mr. Harper
authorized him to thus issue said notes, it was an attempt
to bind the company for his personal benefit in connection
with another corporation, not within the scope of his au-
thority, and was a fraud upon his principal.

Now the notes bear upon their face the conclusive evi-

dence of the fact that they were issued by Mr. Mathews, as agent, to himself as principal, which was notice of itself to the appellants that the notes were void at the instance of the company, which destroyed their immunity as innocent purchasers, and consequently they could not recover thereon unless they could show that the company, by its superior officer, authorized so to do, or its board of directors, with like authority, authorized Mr. Matthews to thus issue the notes; because the appellants being, *prima facie*, not innocent purchasers, the notes being void upon their face, they, in order to entitle them to recover from the company, must show that they were issued rightfully and properly by the company's agent, which they have failed to do.

The judgment is affirmed.

There is no brief on file for the appellees.