# CHARLESTON

Wheeling Ice & Storage Company *v.* Conner *et als.*

Submitted June 13, 1906.    Decided December 11, 1906.

1. Equity—*Pleading—Bill—Multifariousness.*

Conner purchased in his own name the tangible property of Crystal Manufactured Ice Company for $10,300, and paid in cash from the funds of Wheeling Ice & Storage Company, a corporation of which said Conner was secretary, and made his eight negotiable notes of $1,000 each and one note of $1,300 for the residue of purchase money payable to the order of John W. Walter, who indorsed the same. Conner then indorsed on said notes the name "Wheeling Ice & Storage Co. by C. W. Conner Secretary" and delivered the notes to

McKinley and Bowles who negotiated some of them and retained some. Wheeling Ice & Storage Company filed its bill against all the parties interested alleging that McKinley and Bowles fraudulently and unlawfully conspired with Conner to sell to him, said Conner, said property at the said sum of $10,300 to be paid for by the plaintiff company, without the authority of its Board of Directors and without the knowledge or consent of any member of the board except said Conner, and praying a cancellation of said fraudulent indorsement of said notes and that McKinley, Bowles, Crystal Manufactured Ice Company, and C. W. Conner be required to repay to it the $1,000 paid in cash and interest.  Upon demurrer to the bill the court overruled the demurrer.  *Held:* Bill not multifarious and court did not err in overruling the demurrer.  (p. 122.)

2.  CORPORATIONS—*Authority of Secretary—Accommodation Endorsement.*

It cannot be presumed that Conner had the power, by reason of his official position, to bind his corporation as an accommodation indorser of his own promissory notes.  Such a transaction would not be within the scope of his general powers; and one who accepts an indorsement of that character, if a contest arises, must prove actual authority before he can recover.  (p. 130.)

3.  BILLS AND NOTES—*Bona Fide Purchaser—Presumptions.*

There are no presumptions in favor of such a delegation of power. The very form of the paper itself carries notice to a purchaser of a possible want of power to make the indorsement and is sufficient to put him on his guard.  And if he fails to avail himself of the notice and obtain the information thus suggested to him, it is his own fault, and, as against an innocent party, he must bear the loss.  (p. 130.)

4.  SAME.

*Tower* v. *Whip*, 53 W. Va. 158 (Syl. pt. 3), and *Bank* v. *Johns*, 22 *Id.* 520 (Syl.) approved.  (p. 132.)

Appeal from Circuit Court, Ohio County.

Bill by the Wheeling Ice and Storage Company against C. W. Conner and others.    Decree for complainant, and defendants, J. C. McKinley and others, appeal.

*Affirmed.*

HENRY M. RUSSELL and HUBBARD & HUBBARD, for appellants.

ERSKINE & ALLISON, for appellee.

McWHORTER, PRESIDENT:

The Wheeling Ice and Storage Company, a corporation, for a number of years was conducting in the City of

Wheeling the business of manufacturing and selling ice. It seems there were but few stockholders in the corporation and the business was conducted and managed principally by one C. W. Conner, who was secretary and the manager of the concern and seemed to be general superintendent. The Crystal Manufactured Ice Company, Nick Kuhn Ice Company and the Martin's Ferry Ice & Supply Company were other small corporations doing a like business. The said Crystal Company having its principal place of business in the city of Wheeling and the other two in towns opposite the City of Wheeling, but both of them doing business within the city. J. C. McKinley, being interested in the Crystal Manufactured Ice Company, together with H. G. Bowles undertook to get control of the said Nick Kuhn Ice Company and the Martin's Ferry Ice & Supply Company for the purpose of consolidating the three companies and to remove the competition which existed in the business. A plan was suggested by which said three companies should sell out their business and property to the Wheeling Ice & Storage Company giving it the control of the trade of all four companies.

On the 26th of August, 1902, the Crystal Manufactured Ice Company sold and assigned all of its tangible property to C. W. Conner, at the same time McKinley and Bowles transferred to Conner a sufficient amount of the stock of the Nick Kuhn Ice Company and Martin's Ferry Ice & Supply Company to give him the controlling interest in said two companies. In consideration of these transfers Conner gave to McKinley and Bowles, some to each of them, nine notes, eight of them being for $1,000 each and the one for $1,300; and in order to secure the notes he obtained the indorsement of John W. Walter as an acccommodation indorser and in addition said Conner indorsed the name of the Wheeling Ice & Storage Company upon all of the notes. The notes were negotiable and signed by C. W. Conner as maker, made payable to John W. Walter and indorsed by him and then by the Wheeling Ice & Storage Company by C. W. Conner, secretary. In addition to these notes aggregating $9,300, $1,000 was to be paid in cash which was paid to McKinley by Conner out of the money of the Wheeling Ice & Storage Company on the 22nd of September, 1902. At the time of

making the notes Conner executed to Nelson C. Hubbard, trustee, a deed of trust on all the property transferred by the Crystal Manufactured Ice Company to the said Conner enumerating all the property, horses, ice wagons, supply wagons, harness, ice books, &c., and a contract made by the said party with McKinley by which the said Conner received all the rights of McKinley accruing under an agreement made by him with the Schmulbach Brewing Company on the 6th day of November, 1901, which said agreement provided for the furnishing of ice by said Brewing Company to McKinley; also eighty shares of the capital stock of the Nick Kuhn Ice Company of the par value of $100 per share fully paid up and fifteen shares of the capital stock of the Martin's Ferry Ice & Supply Company of the par value of $100 per share on each of which shares the sum of $50 remained unpaid; in trust to secure the holders of the said several notes of $9,300 with their interest and any renewal or extension of said indebtedness in whole or in part. While four of the notes for $1,000 each were made payable on or before sixty days from their date, the others of like amount and the one of $1,300 were payable on or before one year from date. It was provided in the deed of trust that upon default being made upon the payment of any one of said notes all of said indebtedness remaining unpaid should be taken and deemed to be due and the holder of any of said notes should require the trustee to proceed to sell the property so conveyed for one-third of the purchase money or so much more as the purchaser might elect to pay in cash on the day of sale and the residue in two equal payments in one and two months from the day of sale with interest.

At the March rules, 1903, the Wheeling Ice & Storage Company filed its bill in the circuit court of Ohio county against C. W. Conner, J. C. McKinley, H. G. Bowles, Crystal Manufactured Ice Company, Nick Kuhn Ice Company, Martin's Ferry Ice & Supply Company, Wheeling Title & Trust Company, L. F. Stifel, trustee, W. C. Stifel and L. F. Stifel, executors of the will of C. E. Stifel, deceased, John W. Walter and Nelson C. Hubbard alleging that on or before August 26, 1902, the defendants J. C. McKinley, acting with due authority for himself and his then partner, the said H. G. Bowles, and also for the Crystal Manufactured

Ice Company, fraudulently and unlawfully conspired to and with the defendant C. W. Conner to sell to him, the said Conner said property named in the bill for the price of $10,300 to be paid for by the said Wheeling Ice & Storage Co. without the authority or consent of any member of the board except the said Conner; that in pursuance of such conspiracy the said Crystal Manufactured Ice Company on the 26th day of August, 1902, executed and delivered to said Conner a bill of sale of all its physical assets and in furtherance of said conspiracy the said McKinley assigned and transferred to said Conner the said ice contract with Schmulbach Brewing Company; and in further pursuance of said conspiracy the said Bowles on the same day executed a blank assignment of a certificate for forty shares of the capital stock of the Nick Kuhn Ice Company that had been issued to him and delivered the same to the said Conner and the said McKinley executed a blank assignment of a certificate for forty shares of the capital stock of the said last named Ice Company that had been issued to him and delivered the same to Conner, which eighty shares of stock constituted a a majority of the capital stock of that company, and on the same day said McKinley and Bowles each assigned in blank and delivered to the said Conner his certificates for five shares of the capital stock of the defendant Martin's Ferry Ice & Supply Company, and they also then caused to be signed in blank and delivered to said Conner a third similar certificate of five shares, which three certificates were issued by that company on that date on account of each of which shares of the last mentioned capital stock $50 remained unpaid, the par value thereof being $100 per share; and in further pursuance of said conspiracy the said Conner on the said 26th of August executed and delivered to said McKinley and Bowles the said nine negotiable notes payable to Walter and indorsed by him and before delivery of said notes to the said McKinley and Bowles the said Conner, without authority of the board of directors or of the plaintiff, fraudulently and unlawfully indorsed the name of the plaintiff corporation on each of said negotiable notes; intending thereby to pledge the credit of plaintiff as indorser of each of said notes but that indorsements of the plaintiff's name thereon by its terms purported only to have been

made by the said Conner as secretary of plaintiff; and further in pursuance of said conspiracy the said Conner executed the said deed of trust; and that in further pursuance of said conspiracy the said McKinley, on the 26th of August, 1902, acting as aforesaid with due authority for himself and the said Bowles and Crystal Manufactured Ice Company, agreed with the said Conner that the said deed of trust should not be recorded promptly and that before the existence of the said deed of trust should come to the knowledge of the plaintiff or its board of directors arrangements should be made by which the plaintiff should sell its property to the Crystal Manufactured Ice Company, subject to the payment by the Crystal Manufactured Ice Company of the debts of plaintiff and that provision should be made for the payment of the said notes out of the proceeds realized from the sale of bonds to be issued by said Crystal Manufactured Ice Company; that at the time that McKinley and Bowles received the notes said McKinley well knew that said Conner had no authority from plaintiff or its board of directors to pledge the credit of plaintiff as indorser thereon and that said Bowles was bound by that knowledge of his then partner, said McKinley, and that he ought to have known that fact as a matter of law and had knowledge at least of such facts as put him on inquiry as to whether or not said Conner had authority; and alleging that the indorsements of the plaintiff's name on the nine notes was a fraud on the rights of plaintiff and that plaintiff should not be held liable on account of such indorsements; and praying that the indorsements of plaintiff's name on said nine notes be held to be fraudulent and void, that the defendants McKinley, Bowles, Wheeling Title & Trust Company, L. F. Stifel, trustee, and W. C. Stifel, and L. F. Stifel, executors of C. E. Stifel, deceased, and each of them be enjoined from disposing of any of the nine notes that they still hold without first cancelling thereon the indorsement of the name of the plaintiff and that upon final hearing of the cause such injunction is made perpetual and that such of the defendants as were holders of the said notes and their assigns be enjoined from in any manner proceeding to collect any and all of said notes from plaintiff and that defendants McKinley, Bowles, Crystal Manufactured Ice Company and Conner be

required to repay the plaintiff the $1,000 of plaintiff's money that was paid by Conner to McKinley on September 22, 1902, with interest, and be also required to indemnify and save harmless the plaintiff from all damages arising from such fraudulent indorsements of plaintiff's name as well as that arising from their concealment of the giving of such notes and the deed of trust to secure the same from the plaintiff and its board of directors; and that wherein the bill alleged that certain defendants should make discovery as to certain facts those defendants be required to make full discovery as to those facts under oath; and for general relief.

The defendants McKinley, Savings and Trust Company, L. F. Stifel, trustee, W. C. and L. F. Stifel, executors, H. G. Bowles and C. W. Conner, severally filed their demurrers to plaintiff's bill and the same defendants filed their several separate answers denying the material allegations of the bill, to which answers general replications were entered. Defendant John W. Walter also filed his answer and cross-bill to which plaintiff replied generally. Depositions were taken and filed in the cause on behalf of the plaintiff and of defendants. The court overruled the demurrers to plaintiff's bill and the cause came on to be heard on the 22nd day of December, 1904, when the court held and decreed accordingly that the nine several notes aggregating some $9,300 signed by C. W. Conner and payable to the order of John W. Walter as payee and by him indorsed and then having the name of plaintiff company indorsed thereon by C. W. Conner, Secretary, that none of those indorsements of complainant's name on said notes was authorized by the complainant, "and all of them were made fraudulently by the said C. W. Conner; that on or about August 26th, 1902, the defendants, J. C. McKinley and H. G. Bowles, took those nine notes to L. F. Stifel, who then purchased five of those notes for the following named defendants, viz: One for the defendant, Dollar Savings and Trust Company (then Wheeling Title & Trust Company,) one for W. C. Stifel, and L. F. Stifel, Executors of the will of C. E. Stifel, deceased, and three for the defendant, L. F. Stifel, Trustee; that each of those holders had at the time he (or it) became such holder, knowledge of such facts as put him (or it) on inquiry as to the authority of the said C. W.

Conner, as secretary of the complainant, to so endorse the complainant's name on those notes; that each of the said notes being, on its face, the note of C. W. Conner individually and the endorsement thereon of the complainant's name appearing to have been made by the said C. W. Conner, as such secretary, the court is of the opinion that the *prima facie* legal presumption is that he, as such secretary, had no authority to endorse complainant's name on any of those notes; and 'it further appearing to the court that there has been no valid ratification by the complainant of those endorsements of its name on·those notes, and it now being stated by Henry M. Russell, Solicitor for part of the defendants, that since the Dollar Savings and 'Trust Company filed its answer herein the defendant, J. C. McKinley, has lifted or taken up, the note which its answer herein sets forth was deposited with it as collateral security, and it now being agreed by Nelson C. Hubbard, Solicitor for the said J. C. McKinley, that this decree may find that the said J. C. McKinley now holds four of the said notes amounting to $4000, the ownership and possession of one of said notes being undetermined and uncertain, it appears to the court that the said nine notes are held by the following named defendants, viz: One for $1000 (payable one year after its date) by H. G. Bowles, one for $1000 (payable one year after its date) by W. C. Stifel and L. F. Stifel, Executors of the will of C. E. Stifel, deceased, three by L. F. Stifel, Trustee, (one of them being for $1000 payable sixty days after its date, another being for $1000, payable one year after its date, and the third being for $1300 payable one year after its date), and the remaining four of those notes (each for $1000) by J. C. McKinley, it is therefore by the court adjudged, ordered and decreed that the defendants, J. C. McKinley, H. G. Bowles, L. F. Stifel, Trustee, and W. C. Stifel and L. F. Stifel, Executors of the will of C. E. Stifel, deceased, and their agents and assigns, be and each of them is hereby enjoined and restrained from attempting (by suit or otherwise) to collect any of the said notes from complainant, and they are, and each of them is, also hereby enjoined and restrained from selling, transferring or assigning any of those notes to any person or persons without first cancelling thereon the endorsement of the complainant's name.

"And it further appearing to the court therefrom that the said C. W. Conner, as secretary of the complainant, fraudulently and without authority from the complainant, paid to the defendant, J. C. McKinley, on September 22nd, 1902, one thousand dollars ($1000.00) of money belonging to the complainant, it is, by the court, adjudged, ordered and decreed that the complainant do recover of the defendant, J. C. McKinley, the said sum of one thousand dollars, with interest thereon from September 22nd, 1902, until paid, at the rate of six per centum per annum. And the court having indicated its opinion that the defendant, C. W. Conner, was also liable to the complainant . for this one thousand dollars, the complainant suggested that since the complainant's ` testimony was taken in this suit, the said C. W. Conner had died insolvent at Philadelphia, Pennsylvania, and it appearing to the court, from the evidence herein, that the said C. W. Conner was insolvent, and it not being suggested by any of the parties hereto that he left any estate within the jurisdiction of the court or that a personal representative of his estate has been appointed in West Virginia, the court deems it unnecessary to have such personal representative appointed and to have this suit revived against him, especially as none of the parties hereto asks that that be done.

"It is further adjudged, ordered and decreed by the said court that the complainant recover of the defendants, H. G. Bowles, J. C. McKinley, Dollar Savings & Trust Company, Louis F. Stifel, Trustee, and W. C. Stifel and L. F. Stifel, Executors of the will of C. E. Stifel, deceased, its costs incurred in this suit.

"It further appearing to the court that the defendant, Nelson C. Hubbard, Trustee, has in his hands $2020.28 (evidenced by interest bearing certificates of deposit duly issued to him) as the net proceeds realized from the disposition of the property described in the deed of trust of C. W. Conner to him, dated August 26th, 1902, and filed herein on September 6th, 1904, and it further appearing to the court that certain agreements of parties hereto (copies of which are made Exhibits numbered 10 and 13 of the bill) contemplated that that $2020.28 and the interest thereon might be distributed by decree in this suit, it is by the court further adjudged, or-

dered and decreed that the said Nelson C. Hubbard, Trustee, do distribute that $2020.28 and the interest that has accrued thereon as follows, viz—to the complainant forty ninety thirds (40-93) thereof, on account of the said debt of $1000 and interest (owing by the said J. C. McKinley to complainant,) to H. G. Bowles, ten ninety thirds (10-93) thereof on account of the said note held by him to W. C. Stifel and L. F. Stifel, Executors of the will of C. E. Stifel, deceased, ten ninety thirds (10-93) thereof on account of the said note held by them, and to L. F. Stifel, Trustee, thirty-three ninety thirds (33-93) thereof on account of the three notes held by him, as aforesaid.

"It further appearing to the court that the defendant, J. C. McKinley, was interested with the defendant, C. W. Conner, in the plan for the reorganization of the ice business, and that he well knew that what the said C. W. Conner did in the way of purchasing the property of the defendant, Crystal Manufactured Ice Company and in the making of the said nine notes dated August 26th, 1902, was without authority of the complainant and fraudulent, and that the said J. C. McKinley was actively interested in forwarding that fraud, the court is of the opinion that the said J. C. McKinley cannot in equity and good conscience insist upon his right to recover from the defendant, John W. Walter, upon any of those notes and that in his hands they are all tainted with fraud, (whether the endorsement of the said John W. Walter was secured by fair or false representations.) It is therefore, by the court, further adjudged, ordered and decreed that the said J. C. McKinley be, and he is, hereby enjoined and restrained from disposing of any of the said nine notes which he holds without first cancelling thereon the endorsement of the name of the said John W. Walter. It is further adjudged, ordered and decreed that the endorsements of the said John W. Walter upon the said notes held respectively by the said H. G. Bowles, and by the said W. C. Stifel and L. F. Stifel, trustee, are valid and binding upon the said John W. Walter, and that the said H. G. Bowles, W. C. Stifel, and L. F. Stifel, executors as aforesaid, and L. F. Stifel, trustee, are not or is either of them enjoined or restrained from enforcing the last mentioned notes, or any or either them, or from

disposing of the same without cancelling the said endorsements of John W. Walter; excepting, however, that if any of the last mentioned notes shall at any time pass into the possession and ownership of the said J. C. McKinley, said McKinley shall not dispose of the same without first cancelling the endorsement of the said John W. Walter, nor have the right to enforce the collection thereof against said Walter."

From which degree the defendants McKinley, Bowles and the Stifels appealed and say, that the court erred in overruling the demurrers to the bill and in decreeing that the plaintiff was not liable as indorser upon the notes held by McKinley and by Bowles and by W. C. Stifel and L. F. Stifel, executors, and by L. F. Stifel, trustee, and in decreeing in favor of plaintiff the $1000 and interest against J. C. McKinley; and further in decreeing that John W. Walter was not liable as indorser upon those of the said notes held by the said McKinley. None of the appellants, in the briefs of counsel, rely upon the assignment of error because of the overruling of the demurrers. The demurrers set out two grounds, viz: that no ground of equitable jurisdiction appears in the bill, and that the bill is multifarious. First, the bill sets up a clear case of conspiracy on the part of McKinley, Conner and Bowles to defraud the plaintiff and the manner of their carrying out such conspiracy. " When fraud is sufficiently alleged, with proper parties to a bill, a demurrer will not lie."—*Crislip* v. *Teter*, 43 W. Va. 356, (27 S. E. 288.) The questions involved in this suit can be submitted and adjudicated more conveniently in this suit than in any other way. In *School Board* v. *Farish*, 23 S. E. 221 (Va.), where a county treasurer, who had occupied the office for twenty years and had collected money for school and other purposes, failed to account for the same and had given a large number of surety bonds and died leaving insufficient personal property to pay his debts, the bill asked that his administrator and sureties on his bonds be made parties defendant and prayed that said treasurer's estate be settled under order of court, that proper accounts be taken and that a decree be rendered against said estate and the several sureties for the amount due by them. The bill was held to be not multifarious. In the opinion in that case

it is said:  " Courts, in dealing with this question, look particularly to convenience in the adminstration of justice; and, if this is accomplished by the mode of proceeding adopted, the objection of multifariousness will not lie, unless the course pursued is so injurious to one party as to make it inequitable to accomplish the general convenience at his expense. So that, when we look to see if a bill is multifarious, the first question to be determined is, does the bill propose to reach the end aimed at in a convenient way for all concerned? And, if the mode adopted does accomplish the end of convenience, then the question arises, is any one hurt by it, or so injured as to make it unjust for the suit to be maintained in that form?"   *Dillard* v. *Dillard*, 97 Va. 434, (34 S. E. 60;) *Hill* v. *Hill*, 79 Va. 592; *Almond* v. *Wilson*, 75 Va. 623; *Nulton* v. *Isaac*, 30 Grat. 726.

The main question at issue in this cause is, whether the alleged acts of C. W. Conner were fraudulent? And the interests of the defendants being common, centered in the point at issue, the bill is not multifarious. *Curran* v. *Campion*, 85 Fed. Rep. 67; *Sheldon* v. *Armstead*, 7 Grat. 264; *Shafer* v. *O'Brien*, 31 W. Va. 601; *Arnold* v. *Arnold*, 11 W. Va. 449. It is alleged in the bill in the case at bar that all the holders of the negotiable notes had notice at the time they purchased, of such facts as would put them on inquiry as to Conner's authority to indorse the plaintiff's name, that some of the notes were not yet due and might be transferred to innocent holders before maturity and discovery was necessary as to who held the unmatured notes and that a proper injunction was also necessary to prevent such notes from being transferred to innocent holders. We conclude that the demurrers were properly overruled. As to the several assignments of error on the merits of the case Judge Hervey filed an opinion in the case which, in the main, I approve and adopt as part of my opinion: He says:

" The plaintiff in its bill asks for the following relief: That the endorsement of the name of the plaintiff on the notes of August 26th, 1902, be held fraudulent and void; that the holders of the notes be enjoined from disposing of any of them without first cancelling the endorsement thereon of plaintiff's name; that said holders be enjoined from collect-

ing the notes, and that the defendants McKinley, Bowles, Crystal Ice Company and Conner be required to repay to plaintiff the $1000 paid to McKinley on September 22, 1902.

"The evidence clearly establishes the fact that these notes were endorsed by Conner with the name of the Wheeling Ice and Storage Company, without authority from the company.

"It was suggested that while the directors of the company did not expressly give Conner the power to endorse these notes, yet it may be fairly implied from the manner in which the business of the company was conducted that Conner had authority to borrow money and execute notes therefor. I do not think that such a conclusion can be drawn from the evidence. Conner borrowed money and gave the company's notes therefor, but it does not appear that he ever did that in any case in which he was not directed to do so. His position as secretary, treasurer or manager, did not give him the power to issue the company's notes. While it is true that the *bona fide* holder for value of negotiable paper, not due, who has acquired it without notice of the facts, is not affected by facts which make the note invalid between the original parties, this rule does not protect such holder when he takes a note issued without authority. In cases of negotiable instruments, as well as others, one contracting with an agent must inquire into his authority; and a corporation is bound only when an agent acts within the apparent scope of his authority. *Silliman* v. *R. R. Co.*, 27 Grat. 119; *Stainback* v. *Bank*, 11 Grat. 269.

"The holder of negotiable paper takes it at his peril in reference to the authority to make it. (*Chemical Nat. Bank* v. *Wagner*. 93 Ky. 525). This being the law, it devolves upon the defendants who hold these notes to show that they were issued by the authority of the plaintiff company.

"Even if it expressly appeared that Conner had been granted the power to make and issue notes in the name of the company in the usual conduct of its business that showing would not make these notes good against the company. For these notes were not made by the company, but by Conner personally and by him endorsed with the company's name.

This endorsement appeared on the notes when they were first negotiated, and all persons who became interested in them were advised that the notes had not passed into the hands of the company in the usual course of business from Walter, the payee, but that the endorsement of the name of the company was put there before it was negotiated or passed out of the hands of the maker. Under such circumstances authority given Conner to make notes for the company, would not confer upon him the power to make the company an endorser. And these facts being known to all the holders of this paper they had notice that the company was not bound by Conner's endorsement of its name. *Farmington v. R. R. Co.* 150 Mass. 406.

"But there is a still stronger reason why these notes do not bind the company. They were signed by Conner personally, and therefore he was the person who was obligated to pay. The name of the company as security for this obligation was endorsed by Conner. It therefore appears from the face of the paper, together with the fact known to all holders, that the endorsement was made before the notes were negotiated, that Conner sought to make the company responsible for his note. By his act of endorsement the agent of the corporation sought to make his principal responsible for his individual contract. General authority to conduct the business and issue notes of a corporation is authority to do these acts for corporate purposes and in the interest of the corporation only. It does not include the power to do them for the exclusive benefit of others, to the detriment of the corporation. And while a promissory note issued by an agent or officer having such authority in the usual form, and taken by a stranger in the ordinary course of business, carries with it the presumption that it was issued for corporate purposes and under lawful authority, a note issued by such an agent payable to himself is accompanied by no such presumption, but is, of itself, notice that it is without the scope of his general authority, and that it does not bind his principal unless its execution was specially authorized by the corporation. Such a note is a danger signal which the discounter disregards at his peril. To the general rule that the acts and contracts of a general agent within the scope of his authority are presumed to be lawfully done and made there

is a universal exception. It is that an act done or a contract made *with himself* by an agent on behalf of his principal is presumed to be, and is notice of the fact that it is without the scope of his general powers; and no one who has notice of its character may safely rely upon it without proof that the agent was expressly and specially authorized to make that contract.

"An officer of a corporation can not, by virtue of his general powers as agent, bind the corporation in a contract made by himself, as such agent with himself, unless the authority is expressly given. And if he undertakes to bind the corporation by negotiable paper which apparently is issued for his own use and benefit, the notice of want of authority is in the instrument itself. *Park Hotel Co.* v. *Bank*, 86 Fed. 744, and authorities cited on page 745. *Porter* v. *W. & D. Grain Co.*, 78 Minn. 210; *Claffin* v. *Bank*, 25 N. Y. 293; *First Nat. Bank* v. *Armstrong*, 152 U. S. 346 (14 Supt. Ct. 572); *Gerard* v. *R. R. Co.*, 29 Pa. St. 154; *Davis* v. *Rockingham Invest. Co.*, 89 Va. 290.

"One who receives notes or securities of a corporation from an officer of that corporation in payment of or as security for a personal debt of such officer does so at his peril, for *prima facie* the act is unlawful. *Wilson* v. *M. E. R. Co.*, 120 N. Y. 150.

"And evidence that the officer executed and delivered notes for the corporation has no tendency to show authority in him to execute a note for his own accommodation. *Porter* v. *Grain Co.*, 78 Minn. 210.

"The plaintiff company is entitled to have its endorsement on the notes made by Conner cancelled and the transfer of the notes in their present shape restrained.

"The bill also asks that the $1000 paid by Conner out of the funds of the plaintiff, for the property of the Crystal Ice Co., be repaid to it by McKinley, Bowles, Conner and the Crystal Ice Co.

"It is not necessary to say that Conner had no authority to make the purchase he attempted for the Wheeling Ice & Storage Co. I do not think that at the time he made it, he intended it to be for the plaintiff company, but that his object was to purchase the property for himself, hold it until the new company he projected was organized, and then turn

it in to the new company. When circumstances interfered with his carrying out his project he attempted to throw the purchase upon the Wheeling Ice & Storage Co. McKinley must have known of Conner's scheme and the circumstances convince me that he was a party to it. But it matters not whether that is so or not. McKinley ought to have known of Conner's want of authority to make the purchase of the Crystal Ice Co.'s property and he took no trouble to inform himself upon that point. The $1000 was not paid at the time the sale was made and the notes given, nor was it authorized by the company. Afterward when Conner, by representation as to his ability to make a sale satisfactory to the stockholders owning a majority of stock, had gained control of the board of directors, and the affairs of the company were in the hands of himself and McKinley a check was ordered to be drawn in favor of McKinley for the $1000. Neither Conner nor McKinley as directors had a right to vote upon this matter. Both were interested— Conner as one who had bound himself to pay for the property and McKinley as the vendor of the property. Their fraudulent effort to bind the company by a contract they had made with each other cannot be allowed to protect them from the consequences of their unfaithfulness as officers of the corporation. There is no evidence to show that Bowles or any person other than Conner and McKinley was a party to the unlawful appropriation of this $1000, and only those two can be held responsible for it. A decree against them for the amount with interest is allowed.

"Another question arises upon the answer and cross bill of John W. Walter. He avers that his indorsement upon the notes was secured by fraud. His evidence upon that point in view of Conner's death must be received with caution. And when his claim is urged against *bona fide* holders of notes, without notice of the fraud, it cannot be allowed. Notwithstanding his declaration to the contrary it seems clear to me that McKinley was interested with Conner in the plan for the reorganization of the ice business, and that he well knew that what Conner did in the way of purchasing the Crystal Ice Co. property and the making of the notes therefor was without authority of the plaintiff. As one who was actively interested in forwarding this fraud McKinley cannot

in equity and good conscience insist upon his right to recover from Walter upon any of these notes. In his hands they are all tainted with fraud, and this is so whether the endorsement of Walter was secured by fair or false representations. As to such notes therefore as are held by McKinley the court will grant the relief prayed for in his answer and cross bill."

In *Walker* v. *Christain*, 21 Grat. 291, at page 295, President Moncure, in delivering the opinion of the court, says: "Where a promissory note is made or bill of exchange drawn in the name of the agent, without showing the name of the principal on the face of the instrument, as a general rule the agent only, and not the principal, is liable. The intention of the parties in such case is too plainly expressed to admit of any doubt, or to require any aid from the light of surrounding circumstances."

As to C. W. Connor's authority to indorse the name of plaintiff on the notes as accommodation indorser. In Purdy's Beach on Private Corporations, section 852, it is said: "The general rule is that the accommodation and indorsement, or guaranty of the corporation, is *ultra vires* and non-enforceable, but the theory that a corporation has only such powers as are expressly granted, or necessarily implied, is no longer applied to a strictly private corporation. Where its business is private, and it is solvent, a private corporation, with the assent of all the shareholders, may become accommodation endorser of negotiable paper." 1st Morse on Banks and Banking, section 65. And 1st Clark and Marshall's Private Corporations, section 182: "It is well settled that a corporation has no implied power to issue or indorse bills or notes in which it has no interest for the mere accommodation of another, for such a transaction is ordinarily foreign to the objects for which corporations are created; and it can make no difference that the corporation will be incidentally benefitted by such a transaction, or is paid a consideration, or that the transaction is consented to or ratified by all the stockholders." In 10 Cyc. 1109, it is stated: "With the exception of those corporations, such as trust and guaranty companies, which are organized for the express purpose of becoming sureties for other persons or corporations, and with other exceptions elsewhere stated, it may be laid down as a

general rule that no corporation has the power, by any form of contract or indorsement, to become a guarantor or surety or otherwise to lend its credit to another person or corporation."

Bowles claims that he took the notes which were transferred to him in perfect good faith, that he had no knowledge whatever of the details of the transaction between McKinley and Conner which resulted in the giving of these notes. In his answer he denies that he executed the assignment of his forty shares of Nick Kuhn Ice Company stock and the assignment of his five shares of the Martin's Ferry Ice and Supply Company stock on August 26, 1902, and denied that he delivered them to Conner and claims in his sworn answer that he as- signed them to McKinley long before that day and that at the time he did -so he "Had no knowledge or information with respect to what said McKinley intended or expected to do with these certificates and knew nothing about any sale to the said Conner, such as is mentioned in the plaintiff's bill, and had nothing to do with the making or carrying out of the last mentioned sale and did not have any knowledge or information until long after the time when the said certificates are alleged in the said bill to have been delivered to the said Conner that any such delivery had taken place." And yet, N. C. Hubbard, the trustee in the deed of trust made on the 26th day of August, 1902, says that the stock of H. G. Bowles was assigned at the office of the Wheeling Ice and Storage Company on the 26th of August, 1902, and that a number of papers were executed at that time; that Conner, McKinley, Bowles and himself, and probably one or two others, were present, but that he had no reason to think that any others than Conner, McKinley, Bowles and himself were attending to the business that they were transacting;" that meeting was had for the purpose of closing up the transactions between McKinley, Bowles and Conner  *  *  *   but that Mr. Bowles signed no paper used in that settlement until the meeting actually took place." Mr. McKinley also testified that Mr. Bowles indorsed the certificates and offered them to him to carry down to the meeting, but he told him that he had better go down and deliver them himself, which he did and delivered them to Conner. And yet it is claimed by counsel for Bowles, that he had no knowledge of any facts

which should have put him on inquiry as to the authority of
Conner to sign the notes on behalf of the company.    The
holders of the notes rely upon the ratification of the indorse-
ment by Conner of said notes by the directors of the plaintiff
company, viz., McKinley, Bayha and Conner, at their meet-
ing held on the 19th of September, 1902.    The minutes of
the meeting show that "Mr. J. C. McKinley being an inter-
ested party in the above resolutions retired from the room
while the same was being discussed and voted upon, the same
was passed unanimously.    On motion.    The secretary be in-
structed to draw a check for $1,000 on account of this pur-
chase.    Passed."    Minutes were signed  J. C. McKinley,
President, C. W. Conner, Secretary.    Conner was as directly
interested in the ratification as McKinley, the only director
at the meeting not interested individually was W. F. Bayha.
It appears from the evidence of L. F. Stifel, who was acting
in the transaction for himself as trustee and as executor and
for his co-executor W. C. Stifel, that he had knowledge
sometime before the 26th of August of the negotiations go-
ing on between McKinley and Conner, he does not know
whether it was a few days or a few weeks before the trans-
action was consummated, but he says before the matter was.
arranged "Mr. McKinley had a long conversation with me
and I think I also had one with Mr. Nelson Hubbard and the.
whole matter was pretty well gone over, but I really can't
recall now just the information I had as to the transfer of the
stock referred to."    He stated he had been informed of the
deed of trust, but couldn't say whether at the time of the
making the notes or afterwards, and that when he did learn
of it he said it ought to be put on record and so told McKin-
ley; said he didn't understand there was an arrangement not
to put it on record.    It will be borne in mind that these notes
were upon their face the individual notes of C. W. Conner
and indorsed with the name of the plaintiff company by C.
W. Conner, Secretary, and the indorsement would clearly
indicate that the plaintiff company was an accommodation in-
dorser.    *Savings Bank* v. *Shawnee Bank*, 95 U. S. 557,
was an action on an individual note of Parmelee, cashier of
the Shawnee County Bank, for $3,000 payable to the order of
the West St. Louis Savings Bank, indorsed "G. F. Parme-
lee Cashier."    Suit was against the bank as indorser of the

note. Chief Justice Chase, in delivering the opinion of the Court, in speaking of the power of the cashier to re-discount paper, says: "But certainly he is not presumed to have power, by reason of his official position, to bind his bank as an accommodation indorser of his own promissory note. Such a transaction would not be within the scope of his general powers; and one who accepts an indorsement of that ·character, if a contest arises, must prove actual authority before he can recover. There are no presumptions in favor of ·such a delegation of power. The very form of the paper itself carries notice to a purchaser of a possible want of power to make the indorsement, and is sufficient to put him ·on his guard. If he fails to avail himself of the notice, and ·obtain the information which is thus suggested to him, it is his own fault, and, as against an innocent party, he must bear the loss." *Park Hotel* v. *Fourth National Bank of St. Louis*, 86 Fed. Rep. 742. In *Smith* v. *Lawson*, 18 W. Va. 212, it is held: "The holder of a negotiable note, to whom it has been transferred for value by the president of a bank, who has not been authorized to transfer it, is not a *bona fide* holder of the note, and the maker of the note may dispute his title to it, when he brings a suit upon it." 1st Cook on Corporations, section 293: "It is well established that a person dealing with an officer of a corporation in a matter in which the officer is personally interested is not a *bona fide* holder of corporate securities received by him from the ·officer in that transaction. He is bound to inquire into the legality of any stock or corporate note which such officer issues or transfers to him in the officer's personal business, and is chargeable with notice of illegalities in the issue." And 3rd Clark and Marshall on Private Corporations, section 711*b*: "Where an officer of a corporation is dealing for himself to the knowledge of the other party and also assumes to act for and bind his corporation, such fact is sufficient to put the other party upon inquiry as to his power to act for the corporation; and, as a general rule, if the other party ·deals with the officer without making inquiry as to his authority to bind the corporation, he does so at his peril." Tiedman on Bills and Notes, section 111. In *Bank* v. *Wagner*, 93 Ky. 525, 40 Am. St. Rep. 226, it is held: "Notes issued in the name of a corporation, which show upon their face

that they were issued by the payee as agent of the corpora-
tion, are *prima facie* void at the option of the corporation,
and holders cannot recover upon them unless they can show
that the company, by its superior officer, authorized so to
do, or by the board of directors with like authority, author-
ized the agent to thus issue the notes." And in *Stainback*
v. *Bank*, 11 Grat. 269: "A party dealing with the agent,
with knowledge or means of knowledge that under such a
power he is endorsing the name of his principal for his own
benefit, is not entitled to recover from the principal." *Davis*
v. *Investment Co.*, 89 Va. 290: "Where a person deals with
an agent, it is his duty to ascertain the extent of the agency.
He deals with him at his own risk. The law presumes him
to know the extent of the agent's power; and, if the agent
exceeds his authority, the contract will not bind the princi-
pal, but will bind the agent."—*Rosendorf* v. *Poling*, 48 W.
Va. 621 (37 S. E. 555); *Dyer* v. *Duffy*, 39 W. Va. 149 (19
S. E. 540); *Curry* v. *Hale*, 15 W. Va. 756; *Wells* v. *Insur-
ance Co.*, 41 W. Va. 131, (23 S. E. 537).

Counsel for the Stifels and Bowles cites several cases to
support his contention that the act of Conner was ratified,
which cases do not measure up to purpose intended. The
case of *Bank* v. *Laboring Man's Mercantile & Manufactur-
ing Co.*, decided by this Court, 56 W. Va. 446, holds: "That
the failure of the defendant to return to the bank the money
so received by it, when its receipt had become known to its
directors, was a ratification of the execution and use of the
note by Murphy who made it." As stated in 10 Cyc. 1072:
"It is a general principle which applies without regard to
the mode of ratification that a voidable engagement cannot
be ratified in part so far as it is beneficial to the corporation,
and repudiated so far as it is deleterious." The ratification
in case cited was based on the fact that the corporation did
not return the money that it received for the unauthorized
note, which act of holding the money was held equivalent to
a ratification. The next case cited is *Bank* v. *Gas Co.*, 159
Mass. 505, (34 N. E. 1083). In quoting from the opinion in
this case counsel quotes that part, being only a part of a sen-
tence, which taken alone, might be somewhat to his advant-
age, although in case at bar Conner was not authorized gen-
erally to give notes in behalf of the company. The part

quoted by counsel is, "if the note were signed by an officer authorized generally to give notes in its behalf the defendant corporation would be liable, although the agent in signing this particular note exceeded his authority, or the powers of the corporation;" that which the court said preceding the extract quoted and the first part of the same sentence, is as follows: "As the plaintiff discounted this note before maturity 'in the usual course of its business, without notice or knowledge of any defect or infirmity,' *and as its good faith is not questioned,*" these words very materially qualify the latter part of the sentence quoted by counsel and destroy any application that it could have to this case, even if the partial quotation could have any application without the qualification. Counsel also cite in that behalf *Wilson* v. *Railway Co.*, 120 N. Y. 145, 24 N. E. 384. That was a suit upon a note executed in the name of defendant corporation by its president and countersigned by him and made payable to its order and endorsed by him as president and individually and transferred by him to plaintiff who discounted the same paying the proceeds to him. It was there held that the act was *prima facie* unlawful and that unless actually authorized the purchaser would be deemed to have taken the note with knowledge of the rights of the corporation, but it appeared that the note was issued and delivered to the president in pursuance of a resolution of the defendant's board of directors which recited an indebtedness on its part to him for salary for the amount of the note. The other four West Virginia cases cited, viz.; *Bank* v. *Furniture Co.*, 57 W. Va. 625; *Tower* v. *Whip*, 53 W. Va. 158, (44 S. E. 179); *Hotchkiss* v. *Plaster Co.*, 41 W. Va. 357, (23 S. E. 576), and *Bank* v. *Johns*, 22 W. Va. 520; and also *Hotchkiss* v. *Bank*, 21 Wall. 354, were all cases where the signatures of the makers and indorsers of the paper involved were all genuine and valid and the fraud charged was in transferring the title, and those cases cannot be applicable to a case where such signatures to notes were unauthorized. In the first case above, *Bank* v. *Furniture Co.*, it is held that, "A principal is not bound by any act of his agent which is not within the scope of the authority of the latter." But the cases cited do apply and support the decree of the circuit court in the case of John W. Walter, payee and first indorser on the notes in question.

A brief is filed in behalf of McKinley discussing the facts in the case, but the evidence fully sustains the view of the circuit court, "that McKinley was interested with Conner in the plan for the reorganization of the ice business and that he well knew that what Conner did in the way of purchasing the Crystal Ice Co. property and making the notes therefor was without authority of the plaintiff."

Counsel for Walter cites authority to the effect that discharge of the principal debtor operates as a discharge of the surety. His law is good when applicable, but not in this case; the plaintiff company was not the principal debtor. For the reasons stated there is no error in the decree and it will be affirmed.

*Affirmed.*